**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNIFIED MESSAGING SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED ONLINE, INC.; JUNO ONLINE SERVICES, INC.; NETZERO, INC.; AND MEMORY LANE, INC.<br><br>Defendants. | Civil Action No. 1:12-cv-06286<br><br>Hon. Joan H. Lefkow |

## <u>DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11</u>

PUBLIC VERSION of
DOCUMENT PREVIOUSLY FILED AS Dkt. No. 536,
FILED NOW WITHOUT REDACTIONS PURSUANT
TO COURT ORDER (Dkt. No. 547)

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................... 1

       A.    Plaintiff's Patents Are Unenforceable ................................................. 1

             1.    Patents on Variants of the Same Invention Must Be Commonly Owned ... 1

             2.    The '141, '306, '313 and '148 Patents Were All Subject To Common
                   Ownership Terminal Disclaimers ................................................ 2

             3.    An Exclusive License Of All Substantial Patent Rights Is An
                   Assignment Of Ownership .......................................................... 3

             4.    Plaintiff And AMT Split Ownership Of The Patent Rights In
                   Violation Of The Terminal Disclaimers, Rendering The
                   Terminally Disclaimed Patents Unenforceable ........................... 4

             5.    The '074 Patent Is Unenforceable Due To Double Patenting .................... 8

       B.    Plaintiff Had No Basis To Allege Indirect Infringement ...................... 9

III.   THE COMPLAINT SHOULD BE DISMISSED AND SANCTIONS AWARDED ....... 10

       A.    The Rule 11 Standard And Available Sanctions .................................. 10

       B.    Sanctions Should Be Imposed Because Plaintiff Knew That The
             Patents-in-Suit Are Unenforceable ...................................................... 11

       C.    Plaintiff's Defective Indirect Infringement Allegations Evidences the Lack of
             a Pre-Filing Investigation and Warrants Rule 11 Sanctions ................. 13

       D.    The Entire Suit Should Be Dismissed Due To Plaintiff's Misconduct ................ 14

IV.    CONCLUSION ..................................................................................................... 15

4851-9430-7347.7

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Addiction & Detoxification Inst., LLC v. Epperly*,
    2013 U.S. Dist. LEXIS 41085 (N.D. Ill. Mar. 25, 2013)..............................................3

*Antonius v. Spauling & Evenflow Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002)..........................................................................13

*Aptix Corp. v. Quickturn Design Sys.*,
    269 F.3d 1369 (Fed. Cir. 2001)..........................................................................15

*Arcade, Inc. v. Minnesota Mining & Mfg. Co.*,
    1991 U.S. Dist. LEXIS 19768 (E.D. Tenn. July 2, 1991).......................................12

*Bellehumeur v. Bonnett*,
    127 Fed. Appx. 480 (Fed. Cir. 2005)..................................................................13

*Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*,
    393 F.3d 1378 (Fed. Cir. 2005)..........................................................................10

*Carman v. Treat*,
    7 F.3d 1379 (8th Cir. 1993) ..............................................................................11

*City of Livonia Emple. Ret. Sys. v. Boeing Co.*,
    2013 U.S. App. LEXIS 5975 (7th Cir. Mar. 26, 2013)...........................................10

*Consol. Aluminum Corp. v. Foseco Int'l Ltd.*,
    910 F.2d 804. (Fed. Cir. 1990)..........................................................................15

*Crooks v. Harrelson*,
    282 U.S. 55 (1930)............................................................................................7

*Divane v. Krull Elec. Co.*,
    319 F.3d 307 (7th Cir. 2003) ............................................................................11

*E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*,
    No. 11-773, 2012 U.S. Dist. LEXIS 140037 (D. Del. Sept. 28, 2012)..............9, 10

*E.I. du Pont de Nemours & Co. v. United States*,
    432 F.2d 1052 (3d Cir. 1970)..............................................................................3

*Email Link Corp. v. Treasure Island, LLC*,
    2012 U.S. Dist. LEXIS 138042 (D. Nev. Sept. 25, 2012) ......................................12

4851-9430-7347.7

*Gaskell v. Weir*,
    10 F.3d 626 (9th Cir. 1993) ...................................................................................11

*Gayler v. Wilder*,
    51 U.S. 477 (1850) ..............................................................................................6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) .........................................................................................9

*In re Hubbell*,
    No. 2011-1547, 2013 U.S. App. LEXIS 4683 (Fed. Cir. Mar. 7, 2013) ..............................2, 8

*Hughes v. Novi American, Inc.*,
    724 F.2d 122 (Fed. Cir. 1984) ...............................................................................10

*ICU Med., Inc. v. Alaris Med. Sys.*,
    2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16, 2007) ..............................................8, 11, 12

*ICU Med., Inc. v. Alaris Med. Sys.*,
    558 F.3d 1368 (Fed. Cir. 2009) .............................................................................12

*Intellectual Prop. Dev. Inc. v. TCI Cablevision*,
    248 F.3d 1333 (Fed. Cir. 2001) ...............................................................................3

*Keystone Driller Co. v. General Excavator Co.*,
    290 U.S. 240 (1933) .........................................................................................14, 15

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,
    2011 U.S. Dist. LEXIS 66745 (E.D. Wis. June 22, 2011) ..............................................10

*Lemelson v. Wang Labs., Inc.*,
    874 F. Supp. 430 (D. Mass 1994) ...........................................................................13

*Marina Mgmt. Servs. v. Vessel My Girls*,
    202 F.3d 315 (D.C. Cir. 2000) ...............................................................................11

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ...............................................................................10

*Metoprolol Succinate Patent Litig. v. KV Pharm. Co.*,
    494 F.3d 1011 (Fed. Cir. 2007) ...............................................................................8

*Ortho Pharmaceutical Corp. v. Genetics Inst.*,
    52 F.3d 1026 (Fed. Cir. 1995) ...............................................................................3

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945) ...........................................................................................14

4851-9430-7347.7

*Rhinehart v. Stauffer*,
    638 F.2d 1169 (9th Cir. 1979) .................................................................11

*Tayr Kilaab Al Ghashiyah v. Frank*,
    2008 U.S. Dist. LEXIS 520 (E.D. Wis. Jan. 3, 2008) .............................11

*Textile Prods. v. Mead Corp.*,
    134 F.3d 1481 (Fed. Cir. 1998) .................................................................4

*Thermocycle Int'l, Inc. v. A. F. Hinrichsen Sales Corp.*,
    1991 U.S. Dist. LEXIS 8550 (S.D.N.Y. June 25, 1991) ..........................10

*Ultra-Temp Corp. v Advanced Vacuum Sys.*,
    189 F.R.D. 17 (D. Mass. 1999) .................................................................13

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991) ..........................................................3, 4, 6

**Federal Statutes**

37 C.F.R.,
    § 1.321(c)(3) ............................................................................................2, 7

28 U.S.C.,
    § 1927 .......................................................................................................10

35 U.S.C.,
    § 285 ....................................................................................................10, 12

Fed. R. Civ. P. 11 ................................................................................... *passim*

**Other Authorities**

Donald S. Chisum, <u>Chisum on Patents</u> § 9.01 (2012) ...................................1

4851-9430-7347.7

## I.      INTRODUCTION

Defendants Juno Online Services, Inc., NetZero, Inc., and Memory Lane, Inc. (collectively, "Defendants") hereby move the Court for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11, including dismissal of Plaintiff's Complaint and an award of Defendants' attorneys' fees.  Defendants make this motion based upon the facts that: (1) Plaintiff brought suit on patents that it knew are unenforceable because four are not commonly owned as required by their terminal disclaimers, and the fifth is unenforceable due to double patenting; and, (2) Plaintiff has also brought unsubstantiated infringement claims against Defendants that reveal a lack of a proper pre-filing investigation.

Fed. R. Civ. P. 11(b) provides that an attorney who signs a pleading in federal court certifies that a reasonable inquiry was conducted to determine that the pleading is non-frivolous, warranted under the law, and supported by facts.  Courts have imposed Rule 11 sanctions where a plaintiff has brought suit on patents that it knew or should have known to be unenforceable.  Rule 11 also authorizes a district court to dismiss a case in its entirety where the plaintiff has pursued unfounded claims.  Finally, where, as here, the offending pleading is the complaint itself, the district court is also empowered to award the injured party all of its attorneys' fees incurred in defending the action.

## II.      FACTUAL BACKGROUND

### A.      Plaintiff's Patents Are Unenforceable

#### 1.      Patents on Variants of the Same Invention Must Be Commonly Owned

Although a patentee is entitled to obtain multiple patents on closely related technology, the doctrine of "double patenting" precludes a patentee from gaining patent rights in a given invention (or obvious variants thereof) that extend beyond the expiration date of the first patent covering that invention.  3A Donald S. Chisum, <u>Chisum on Patents</u> § 9.01 (2012).  A closely related principle is that *multiple related patents covering the same invention (or obvious variants thereof) must be commonly owned,* such that a judgment against the owner will preclude any future lawsuits against the same accused infringer over the same technology based on essentially

identical patents.[1]  *In re Hubbell*, No. 2011-1547, 2013 U.S. App. LEXIS 4683, *17 (Fed. Cir. Mar. 7, 2013) ("the possibility of harassment by multiple assignees exists when [related] issued patents lack common ownership").

To address the foregoing concerns, the Patent Office requires any patentee seeking to obtain multiple patents on the same invention to agree to a "terminal disclaimer" that expressly provides that: (1) the later-issued patent will expire on the same date as the earliest patent covering the same technology; and, (2) all related patents covering the same technology will be *commonly owned*.  Importantly, if the common ownership requirement is violated, the terminally disclaimed patent is rendered *unenforceable* and may not be sued upon.  The common ownership requirement is codified at 37 C.F.R. § 1.321(c)(3), which provides (emphasis added):

> A terminal disclaimer, when filed to obviate judicially created double patenting in a patent application…must…include a provision that any patent granted on that application or any patent subject to the reexamination proceeding shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting.

### 2. The '141, '306, '313 and '148 Patents Were All Subject To Common Ownership Terminal Disclaimers

Plaintiff has accused Defendants of infringing U.S. Patent Nos. 6,857,074 ("'074 patent"), 7,836,141 ("'141 patent"), 7,895,306 ("'306 patent"), 7,895,313 ("'313 patent"), and 7,934,148 ("'148 patent"), (collectively, "Patents-in-Suit").  As a condition for allowance of the '141, '306, '313 and '148 Patents (the "Terminally Disclaimed Patents"), the entity prosecuting the patent applications, Advanced Messaging Technologies, Inc. ("AMT"), agreed to a terminal disclaimer that required joint ownership of the Terminally Disclaimed Patents along with previously-issued U.S. Patent No. 6,350,066 ("'066 Patent").  These terminal disclaimers reflected the Patent Office's belief that the Terminally Disclaimed Patents and the '066 Patent

---

[1] It is also possible that multiple owners may own *undivided* joint interests in a single patent, as is the case with co-inventors.  In this situation, common ownership still exists because the rights are undivided, and standing rules require the joint owners to litigate together and be bound by the same judgments.

4851-9430-7347.7

covered obvious variants of the same invention. The disclaimers were included in the publicly-available file histories of each of the Terminally Disclaimed Patents, copies of which have been attached as Exs. 1-4 to the accompanying Declaration of William J. Robinson ("Robinson Decl."). Each terminal disclaimer provides (emphasis added):

> The owner [AMT] hereby agrees that [this patent] shall be <u>enforceable only</u> for and during such period that it and [the other Terminally Disclaimed Patents and the '066 Patent] are <u>commonly owned</u>. This agreement runs with [this patent] and is binding on the grantee, its successors and assigns.

Thus, the <u>only</u> reason AMT was able to gain allowance of the Terminally Disclaimed Patents from the Patent Office was by agreeing that they would be commonly owned with each other and the '066 Patent, and that requirement appears on the face of the publicly available records of the Terminally Disclaimed Patents. As discussed *infra*, Plaintiff's participation in a complex series of patent ownership agreements with AMT reveals that Plaintiff was aware of the terminal disclaimer problem and conspired with AMT to circumvent it.

Although the publicly available file history for the '074 Patent does not contain a terminal disclaimer, the '074 Patent is unenforceable due to double patenting, as explained *infra*.

### 3. An Exclusive License Of All Substantial Patent Rights Is An Assignment Of Ownership

In order to understand why the common ownership terminal disclaimers have been violated, it is important to first understand that an exclusive license of all substantial patent rights is the equivalent of an assignment of ownership. *See Intellectual Prop. Dev. Inc. v. TCI Cablevision*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) ("A grant of all substantial rights in a patent amounts to an assignment.").[2] Here, Plaintiff has asserted in its Complaint against Defendants

---

[2]  *See, e.g., Addiction & Detoxification Inst., LLC v. Epperly*, 2013 U.S. Dist. LEXIS 41085, *10-11 (N.D. Ill. Mar. 25, 2013) ("an exclusive licensee [is] the equivalent of an assignee of the patent."); *Ortho Pharmaceutical Corp. v. Genetics Inst.*, 52 F.3d 1026, 1030 (Fed. Cir. 1995) ("Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective 'patentee' under the statute"); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect") (finding an "exclusive licensee" that possessed all rights to sue upon the patents to be an assignee); *E.I. du Pont de Nemours & Co. v.*

that it "is the exclusive licensee of the [Patents-in-Suit], with ownership of all substantial rights…including the right [to] exclude others and to enforce, sue and recover damages for past and future infringement." Complaint (D.I. 1), ¶¶ 11, 19, 28, 37, 46. (emphasis added). By such wording, Plaintiff is asserting that it owns the Patents-in-Suit. Although Plaintiff calls itself a "licensee," this choice of wording does not change the reality of an assignment of ownership interest. *Vaupel*, 944 F.2d at 875.

Plaintiff's claim of having "ownership of all substantial rights" was not only clear, but also deliberate because it was a <u>necessary condition for standing</u>. If Plaintiff did not possess all substantial rights in the Patents-in-Suit, it would not have had standing to sue in this Court or any of the other district courts where it has brought suit around the country. *Textile Prods. v. Mead Corp.*, 134 F.3d 1481, 1483-84 (Fed. Cir. 1998) (only a patentee or an exclusive licensee with all substantial rights may sue it its own name).

      **4.**      **Plaintiff And AMT Split Ownership Of The Patent Rights In Violation Of The Terminal Disclaimers, Rendering The Terminally Disclaimed Patents Unenforceable**

Plaintiff and AMT have a long and complicated history. The story begins with j2 Global, Inc. ("j2," formerly j2 Global Communications, Inc., NASDAQ: JCOM). The Patent Office's official assignment records show that j2 acquired the '066 Patent, the '074 Patent, and the applications that later became the '306, '141, '313 and '148 Patents in the 2004-2006 timeframe. *See* official USPTO assignment records, Robinson Decl. Ex. 6. In July 2009, j2 assigned the '074 Patent and the '306 Patent application to Acacia Patent Acquisition, LLC ("Acacia PA"). *Id.* Acacia PA is a subsidiary of Acacia Research Corporation ("Acacia," NASDAQ: ACTG), the "Mother of all Patent Trolls" according to some. *Id.* j2 retained ownership of the '066 Patent and the '141, '313, and '148 Patent applications. In September 2009, Acacia PA assigned all rights in the '074 Patent and the '306 Patent application to Plaintiff, which is one of Acacia's wholly owned subsidiaries. *Id.* In the meantime, j2 – along with AMT, its wholly owned subsidiary –

---

*United States*, 432 F.2d 1052, 1055 (3d Cir. 1970) ("[A] transfer of all the substantial rights in a patent is deemed an assignment . . . anything less is called a license . . . .").

commenced numerous litigations alleging infringement of the '066 Patent. *See, e.g.*, C.D. Cal Case Nos. 09-CV-4014, 12-CV-3439, 11-CV-04686, 11-CV-4239, and D. Col. Case No. 12-CV-00446 (excerpts at Robinson Decl., Ex. 5).

On May 10, 2010, while the Terminally Disclaimed Patent applications were still being prosecuted in the Patent Office, AMT and Plaintiff entered into an agreement ("May 10 Agreement," Robinson Decl. Ex. 7) whereby Plaintiff transferred all rights in the '074 and '306 Patents to AMT, while AMT simultaneously gave an exclusive license back to Plaintiff of all substantial rights in the Patents-in-Suit, but not the '066 Patent. As discussed *supra*, an exclusive license of this kind amounted to an assignment of ownership in the Patents-in-Suit to Plaintiff. On September 14, 2010, AMT executed terminal disclaimers pertaining to the '141, '306 and '313 Patent applications. Robinson Decl., Exs. 1-3. In each of those terminal disclaimers, AMT represented that it was the owner of "100% interest in the instant application," despite its prior transfer of rights to Plaintiff.[3]

Apparently realizing that they had blundered by dividing ownership of the Terminally Disclaimed Patents and the '066 Patent, Plaintiff and AMT negotiated a new agreement dated October 29, 2010 ("October 29 Agreement," Robinson Decl. Ex. 8) that voided the May 10 Agreement, and attempted to divide up the rights to the Patents-in-Suit and the '066 Patent in such a way that (1) AMT could continue its pending lawsuits on the '066 Patent, (2) Plaintiff could pursue lawsuits based on the Patents-in-Suit, and (3) it would seem as if the common ownership terminal disclaimers had not been violated.

With these unachievable and improper objectives in mind, in the October 29 Agreement, Plaintiff assigned all rights in the '066 Patent and the Patents-in-Suit to AMT, and AMT simultaneously granted back to Plaintiff an exclusive license of all substantial rights in the '066 Patent and the Patents-in-Suit with respect to certain "Covered Entities." This ownership structure is reflected in Section 2.2 of the October 29 Agreement, which provides:

---

[3] A terminal disclaimer was also executed relative to the '148 Patent on May 2, 2011 by AMT. Robinson Decl. Ex. 4.

4851-9430-7347.7

> [AMT] grants to UMS (i) an exclusive (except with respect to Licensor), non-transferable, worldwide, right and license under the Patents [*i.e.*, the Patents-in-Suit and the '066 Patent] to make, use, import, offer or sell the inventions or discoveries recited in the claims of the Patents; (ii) all rights of Licensor to sue for past, present and future infringement of the Patents by Covered Entities[4], including the right to collect and receive any past, present or future damages, royalties, or settlements for such infringements, all rights to sue for injunctive or other equitable relief, and any and all causes of action relating to any of the inventions or discoveries recited in the claims of the Patents…

As discussed earlier, a transfer of all substantial rights – particularly the right to sue and collect damages – is recognized as transfer of ownership, rather than a mere license. *Vaupel*, 944 F.2d at 875 (transfer of the exclusive right to sue is "particularly dispositive" in determining the effective patentee under the law). Indeed, Plaintiff pled in its Complaint that it is the owner of all substantial rights in the Patents-in-Suit in order to gain standing before this Court (as well as all the district courts before MDL proceedings were initiated). Because the October 29 Agreement transferred all substantial rights with respect to the Covered Entities to Plaintiff, it effectively created two patent monopolies where previously there had been only one. Plaintiff was rendered the owner of the Patents-in-Suit and the '066 Patent for purposes of enforcing them against a defined universe of Covered Entities (that Plaintiff says included Defendants), while AMT was made the owner of the patents for purposes of enforcing them against all "Non-Covered Entities."[5]

---

[4] The list of Covered Entities is provided in Exhibit D to the October 29 Agreement, which was produced completely redacted to Defendants despite Defendants' agreement to maintain all materials as Attorneys' Eyes Only-Confidential. Plaintiff justified the redaction on non-specific privilege grounds. When Defendants asked how an agreement signed between two different parties could possibly be privileged, Plaintiff failed to provide an answer. *See* Robinson Decl. Ex. 9.

[5] In addition to being a violation of the terminal disclaimers, the split of ownership between Plaintiff and AMT is also a violation of the principle that a patent monopoly may not be divided. *Gayler v. Wilder*, 51 U.S. 477, 494-495 (1850) ("it was obviously not the intention of the legislature to permit several [patent] monopolies to be made out of one, and divided among different persons").

4851-9430-7347.7

A diagram of the ownership split is shown to the right.  Plaintiff's division of rights in the

Terminally Disclaimed Patents and the '066 Patent was a clear and blatant violation of the plain language of the terminal disclaimers, which each provided that the Terminally Disclaimed Patents would be enforceable "only for and during such period that [they] are commonly owned [with each other and the '066 Patent]."   Here there are <u>two separate owners of divided interests</u> in both the '066 Patent and the Terminally Disclaimed Patents – not common ownership as required by the terminal disclaimers.   Neither the controlling terminal disclaimers nor 37 C.F.R. § 1.321(c)(3) provide for any exception

**The Patents-in-Suit Are Not Commonly Owned With The '066 Patent**

| AMT-owned (Non-Covered Entities) | Plaintiff-owned (Covered Entities) |
|---|---|
| '066 Patent | Patents-in-Suit |
| Patents-in-Suit | '066 Patent |

whereby ownership may be divided as to different groups of "covered entities."  The split of ownership means that as a matter of law, the legal requirement of common ownership has been violated, and the Terminally Disclaimed Patents are unenforceable.  The only conclusion to be drawn from Plaintiff and AMT's contractual machinations is that Plaintiff knew of the common ownership problem, but brought suit on unenforceable patents anyway.  *See, e.g., Crooks v. Harrelson*, 282 U.S. 55, 59-60 (1930) (the literal terms of a law must be enforced even if the party argues they should not be applied in a particular case).  Such actions constitute a violation of Rule 11.[6]

---

[6] Although it is sufficient to show that the Patents-in-Suit are not commonly owned to demonstrate that the terminal disclaimers have been violated, it is worthy to note that the "mutant" ownership structure devised by Plaintiff and AMT runs counter to the policy objectives of the terminal disclaimers.  Plaintiff and AMT have effectively created two patent monopolies out of one, and in doing so have opened a Pandora's Box of possible duplicate liabilities that the

4851-9430-7347.7

### 5.    The '074 Patent Is Unenforceable Due To Double Patenting

To the extent that the Patent Office failed to impose a terminal disclaimer on the '074 Patent, this was an oversight that renders the patent unenforceable on the grounds of double patenting because the alleged inventions claimed in the '074 Patent are merely variants of those claimed in the Terminally Disclaimed Patents. *See, e.g., Metoprolol Succinate Patent Litig. v. KV Pharm. Co.,* 494 F.3d 1011, 1016 (Fed. Cir. 2007) (affirming district court's finding of invalidity due to double patenting and explaining legal standard); *ICU Med., Inc. v. Alaris Med. Sys.,* 2007 U.S. Dist. LEXIS 34467, *15-*18 (C.D. Cal. Apr. 16, 2007) (pointing out error by Patent Office in not requiring a terminal disclaimer and sanctioning plaintiff for suing on what it should have known was an invalid patent).    Importantly, <u>Plaintiff cannot cure the double patenting defect</u> by filing a terminal disclaimer at this stage in the proceedings because the '074 Patent would have to be commonly owned with the '066 Patent, and ownership of the '066 Patent is divided with AMT. *Hubbell*, 709 F.3d at 1048 (terminal disclaimer defect uncurable).

Here, of the asserted claims of the Patents-in-Suit, those of the '074 Patent are the broadest, and encompass within them the same inventions that were subject to terminal disclaimers in the other four patents.[7]    Regardless of how individual claim terms of the

---

terminal disclaimers were expressly designed to prevent.  For example, Section 9 of the October 29 Agreement provides that all patent rights revert to AMT in the event that Plaintiff concludes its licensing endeavors (which could be at any time), breaches the agreement, or goes bankrupt. Such termination would result in a situation where a Covered Entity previously sued by Plaintiff could be sued again by AMT for the same acts of infringement.  Or suppose that Defendants defeat Plaintiff in the present lawsuit by proving that the Patents-in-Suit are invalid. Rather than putting an end to the matter for all time as it should, that victory would not preclude AMT from suing Defendants' customers for the same acts of infringement, putting Defendants' business operations in jeopardy a second time.  These are just some of the possible ways in which the October 29 Agreement leaves open the possibility of duplicate liabilities.  They are also besides the point.  The conditions of the terminal disclaimers were plain and simple.  Plaintiff violated those conditions.

[7]    Asserted Claim 1 of the '074 Patent is directed broadly to a computerized internet message alert system that, generally speaking, performs the following functions: (1) receives a message, (2) stores the message in a mailbox, (3) notifies the recipient of the message through a browser interface, and (4) allows the recipient to access the message through the browser interface.[7] *See* '074 Patent at D.I. 1-1.  The asserted claims of the Terminally Disclaimed Patents are essentially narrower incarnations of the '074 Patent invention, meaning that the '074 Patent should have

---

4851-9430-7347.7

Terminally Disclaimed Patents might be construed, it strains logic to imagine how the broader claims of the '074 Patent could not be subject to a terminal disclaimer, while the narrower claims of the remaining Patents-in-Suit are. The Patents-in-Suit all claim variants of the same alleged invention, and the '074 Patent's lack of terminal disclaimer renders it unenforceable due to double patenting – a defect that cannot be remedied because the '074 Patent is not commonly owned with the '066 Patent. Thus, the assertion of the '074 Patent is also a Rule 11 violation.

**B.      Plaintiff Had No Basis To Allege Indirect Infringement**

Compounding the fact that Plaintiff knew or should have known that its patents are unenforceable is the fact that Plaintiff also asserted baseless infringement claims against Defendants. Defendants' earlier-filed Motion to Dismiss showed that Plaintiff had no basis upon which to allege contributory or induced infringement, and that Plaintiff apparently included these frivolous claims for no other purpose than harassment. *See generally* D.I. 25 ("Motion to Dismiss"). Both claims were pled awkwardly alongside direct infringement allegations ("Defendants have directly and/or indirectly infringed"), despite the fact that this form of pleading has been routinely criticized. *See, e.g., E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773, 2012 U.S. Dist. LEXIS 140037, *23 n.5 (D. Del. Sept. 28, 2012).

As discussed in the Motion to Dismiss, with regard to both of Plaintiff's contributory and induced infringement claims, Plaintiff failed to plead the necessary element of Defendants' knowledge of the patent before the lawsuit. Motion to Dismiss at 4-7, 9-13; *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011). Plaintiff compounded this problem by not limiting its requested damages to the post-Complaint time period. *Id.* at 4-6. Furthermore, Plaintiff's contributory infringement claim lacks the necessary factual allegations that Defendants sold or offered to sell a component of a machine, a material, or an apparatus, and that such component is not a staple article of commerce or does not have substantial non-

---

been subject to the same terminal disclaimer as the rest of the Patents-in-Suit. *See, e.g.*, '141 Patent at D.I. 1-2, asserted Claim 21 (claiming narrower variant of Claim 1 of the '074 Patent); '306 Patent at D.I. 1-3, asserted Claim 5 (same).

infringing uses. *Id.* at 7-9, 11-13. These fundamental defects in Plaintiff's pleading, coupled with the overall course of improper conduct described herein, show that Plaintiff has either proceeded vexatiously or with an inexcusable lack of support for its legal positions.

## III. THE COMPLAINT SHOULD BE DISMISSED AND SANCTIONS AWARDED[8]

### A. The Rule 11 Standard And Available Sanctions

Fed. R. Civ. P. 11(b) provides that an attorney who signs a pleading certifies that a reasonable inquiry was conducted to determine that the pleading is nonfrivolous, warranted under the law, and supported by facts. The Seventh Circuit has clarified that Rule 11 liability applies not only in the case of overtly frivolous pleadings, but also when an attorney should have known that a pleading was baseless and failed to conduct a proper investigation. *City of Livonia Emple. Ret. Sys. v. Boeing Co.*, 2013 U.S. App. LEXIS 5975, *23 (7th Cir. Mar. 26, 2013).

Rule 11 sanctions should be imposed where a plaintiff has brought suit on patents that it knew or should have known to be unenforceable.[9] Rule 11 also authorizes a district court to

---

[8] Defendants are also entitled to recover their attorneys' fees pursuant to 35 U.S.C. §285 ("Section 285"), which authorizes a district court to award a prevailing party in a patent case its full attorneys' fees upon clear and convincing evidence that the case is exceptional. A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, and conduct that violates Rule 11. *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Plaintiff's conduct herein easily satisfies the exceptional case standard. Defendants note that Plaintiff's conduct could also be sanctioned under 28 U.S.C. §1927 and/or the Court's inherent powers.

[9] *See, e.g., Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2011 U.S. Dist. LEXIS 66745, *13 (E.D. Wis. June 22, 2011) ("Of course, Rule 11 also allows sanctions if [the plaintiff] knew at the time it filed its lawsuit that the [] Patent was invalid."); *Thermocycle Int'l, Inc. v. A. F. Hinrichsen Sales Corp.*, 1991 U.S. Dist. LEXIS 8550, *7 (S.D.N.Y. June 25, 1991) ("If Thermocycle's attorneys were responsible for commencing a patent infringement action when they knew that their client's patent was invalid, or when they had no reasonable ground to believe in the patent's validity, this would clearly justify the imposition of sanctions under Rule 11."); *see also Hughes v. Novi American, Inc.,* 724 F.2d 122, 125 (Fed. Cir. 1984) (upholding dismissal and attorneys fees pursuant to Section 285 where "suit was brought without a good faith belief in the validity of the patent."); *Mathis v. Spears,* 857 F.2d 749, 751 (Fed. Cir. 1988) (same).

4851-9430-7347.7

dismiss a case in its entirety where the plaintiff has pursued unfounded claims.[10]  Where the offending pleading is the complaint, the district court is also empowered to award the injured party all of its attorneys' fees incurred in defending the action.[11]

B.   **Sanctions Should Be Imposed Because Plaintiff Knew That The Patents-in-Suit Are Unenforceable**

As shown in Section II.A, the Terminally Disclaimed Patents are unenforceable due to the deliberate violation of their common ownership terminal disclaimers, and the '074 Patent is unenforceable due to double patenting.  Even if the Court does not find that the '074 Patent is unenforceable, Plaintiff's suit should still be dismissed in its entirety and sanctions awarded because Plaintiff knew that four of the five asserted patents were plainly unenforceable, and should be equitably barred from seeking further relief from the Court.  Plaintiff's conduct is all the more egregious when one considers how long Plaintiff has been engaged in frivolous litigation.  Since March 15, 2011, when Plaintiff sued 27 defendants in the Eastern District of Texas (Case No. 6:11cv120), Plaintiff has been on a warpath of litigation based on the unenforceable Patents-in-Suit.  Scores of defendants have been named in multiple jurisdictions across the country, requiring countless millions of dollars to be spent in defense.

Dismissal and attorneys' fees under Rule 11 were awarded for far less in *ICU Med., Inc. v. Alaris Med. Sys.*, 2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16, 2007).  In that case, the plaintiff had not already engaged in two years of nationwide litigation, as Plaintiff has here.  ICU had asserted patent claims that were substantially the same as those of another of the plaintiff's earlier-issued patents.  *Id.* at *15-*16.  As with the '074 Patent in the present case, the Patent

---

[10]   *Tayr Kilaab Al Ghashiyah v. Frank*, 2008 U.S. Dist. LEXIS 520, *6 (E.D. Wis. Jan. 3, 2008); *Marina Mgmt. Servs. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) ("Dismissal is a legitimate sanction under Rule 11"); *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993); *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979).

[11]   *Divane v. Krull Elec. Co*., 319 F.3d 307, 315 (7th Cir. 2003) (sanctions for filing wholly frivolous complaint are fees "that the defendant spent answering the complaint and defending against it."); *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) ("In a case like this, where the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions.").

Office had failed to spot the double-patenting problem, resulting in the patent issuing without a proper terminal disclaimer. *Id.* at *16. The district court sharply criticized the plaintiff for filing the lawsuit based an unenforceable patent (*id.* at *15-*18) (emphasis added):

> These were flaws that even a cursory review of the asserted patent's prosecution history would have revealed… ICU was at best grossly negligent in failing to detect the presence of the double-patented claims in the '509 Patent before asserting them in the complaint and before claiming diligence before the Court…That ICU was unable to detect these obvious flaws in its asserted patent for several months before and after the commencement of the litigation shows not mere negligence, but <u>gross negligence or studied ignorance</u>, neither of which justifies placing the burden on [defendant]. ICU's self-serving protests that they 'didn't know' of the double-patenting and simply overlooked the 'red flag' just discussed are wholly unconvincing. Further, [defendant] need not show what was in ICU's 'mind' in overlooking these errors, and is at liberty to prove facts establishing that [ICU] should have known, i.e. to prove facts that render the 'I didn't know' excuse unacceptable.

The Court found the plaintiff in violation of Rule 11, also found the case exceptional under 35 U.S.C. § 285, and awarded the defendant its attorneys' fees. The Federal Circuit considered the matter on appeal and expressly affirmed. *ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1380 (Fed. Cir. 2009).

Indeed, this would not even be the first time that Acacia has been caught up in a scheme involving the assertion of an unenforceable patent in violation of a common ownership terminal disclaimer. In *Email Link Corp. v. Treasure Island, LLC*, 2012 U.S. Dist. LEXIS 138042, *13 (D. Nev. Sept. 25, 2012), the district court dismissed a suit by an Acacia subsidiary that, like Plaintiff, had asserted a terminally disclaimed patent that was not commonly owned. At a minimum, Plaintiff's collusion with AMT to violate the terminal disclaimers and bring suit on unenforceable patents should be deemed patent misuse. *Arcade, Inc. v. Minnesota Mining & Mfg. Co.*, 1991 U.S. Dist. LEXIS 19768, *48 (E.D. Tenn. July 2, 1991) ("Patent misuse occurs when a patentee enforces its patent knowing that it is either invalid or unenforceable or beyond the scope of the patent's legal monopoly.").[12]

---

[12] Further discovery in this case may confirm that Plaintiff is liable for a host of other serious transgressions, including inequitable conduct before the Patent Office and RICO violations. *See,*

4851-9430-7347.7

### C. Plaintiff's Defective Indirect Infringement Allegations Evidences the Lack of a Pre-Filing Investigation and Warrants Rule 11 Sanctions

Plaintiff's failure to perform a pre-filing investigation regarding indirect infringement infects all of its claims. As discussed in the Motion to Dismiss, there is no factual basis for the claims. Rule 11 requires an attorney, *inter alia*, to do a pre-filing investigation and to certify to the best of his/her knowledge, information, and belief that the claims, defenses, and other legal contentions are warranted by existing law or by non-frivolous argument for the extension or modification of existing law, and that the allegations and other factual contentions have, or are likely to have, evidentiary support. *See, e.g.,* Rule 11(b)(2) and (3). As the Federal Circuit discussed in *Antonius v. Spauling & Evenflow Cos.*, 275 F.3d 1066, 1073-74 (Fed. Cir. 2002):

> Rule 11 requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims. *View Eng'g* [*v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000)]…An attorney's prefiling actions are evaluated using a standard of objective reasonableness. *Cabell* [*v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987)]. Thus, an attorney violates Rule 11(b)(3) when an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents.

The pre-filing investigation requirement applies equally to method claims. *See Ultra-Temp Corp. v Advanced Vacuum Sys.*, 189 F.R.D. 17, 25 (D. Mass. 1999).

If Plaintiff had complied with the pre-filing investigation required by Rule 11, it should have been able to allege *precisely* in the Complaint how the Defendants (or a third party induced by the Defendants or whose infringement was contributed to by defendants) practiced the asserted claims and had the knowledge and other elements that would have established a basis for the indirect infringement claims. The fact that the Complaint was devoid of such material confirms that Plaintiff has failed to do the required Rule 11 investigation.

---

*e.g., Bellehumeur v. Bonnett*, 127 Fed. Appx. 480, 486 (Fed. Cir. 2005) ("Affirmative misrepresentations of a material fact, in this instance co-ownership of a patent application subject to a terminal disclaimer, can be grounds for finding a patent unenforceable for inequitable conduct."); *Lemelson v. Wang Labs., Inc.*, 874 F. Supp. 430, 434 (D. Mass 1994) (RICO claim properly pled in a patent case).

### D.     The Entire Suit Should Be Dismissed Due To Plaintiff's Misconduct

Even if the Court does not find that the '074 Patent is unenforceable on double patenting grounds, Plaintiff's suit should still be dismissed in its entirety and sanctions imposed because of Plaintiff's extreme misconduct.  As shown above, Plaintiff knew of the terminal disclaimer problem before it brought suit on unenforceable patents.  Plaintiff compounded this offense by accusing Defendants of indirect infringement without any basis.  Plaintiff's entire course of conduct reflects a reckless disregard for scores of litigants (who have spent millions), as well as the district courts they have asked to preside of their numerous lawsuits.  Having engaged in such misconduct, Plaintiff should not be allowed to proceed with this litigation. As explained in *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244 (1933):

> whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.[13]

Here, Plaintiff has asked the Court to find that each of its five Patents-in-Suit is infringed by three of Defendants' services: Juno Message Center, NetZero Message Center and Clasmates.com Inbox ("Accused Products," collectively).  *See* Complaint (D.I. 1).  It would violate basic principles of equity to allow Plaintiff to use the '074 Patent to seek damages on those Accused Products, when the exact same relief must be denied relative the other four Patents-in-Suit due to Plaintiff's misconduct.  To find otherwise would condone bringing suit on multiple unenforceable patents in the hope that one might slip through.

The U.S. Supreme Court upheld dismissal as to multiple patents on similar facts in the *Keystone* case.  In *Keystone*, one of five asserted patents had been procured and maintained through fraud.  290 U.S. at 244.  The plaintiff complained that the other four patents should not be dismissed from the suit.  *Id.*  The Supreme Court disagreed, explaining that Plaintiff's

---

[13] *See also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("he who comes into equity must come with clean hands") (affirming dismissal in a patent case where plaintiff was aware of fraud).

misconduct infected all five of the patents because they were all directed to the same accused products: "the devices covered by the five patents [are] important, if not essential, parts of the same machine. And [plaintiff's] claims warrant the inference that each [patent] supplements the others." *Id.* at 246. Just as in *Keystone*, Plaintiff's Patents-in-Suit all cover variants of the same technology and have been asserted against the same Accused Products.

Moreover, as shown in Section III.B.2, the '074 Patent was one of the strings tying together a web of unenforceable patents that Acacia and Plaintiff used to ensnare Defendants. Thus, the '074 Patent in inextricably tied the rest of the Patents-in-Suit. *See, e.g., Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810-812. (Fed. Cir. 1990) (recognizing in an analogous context that inequitable conduct infects related patents). The fact that Plaintiff failed to conduct a pre-filing investigation concerning indirect infringement further infects all of Plaintiff's claims and compels the conclusion that this sham lawsuit must be dismissed in its entirety. *See, e.g., Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1374 (Fed. Cir. 2001) (affirming dismissal of entire case where plaintiff engaged in litigation misconduct).

## IV. CONCLUSION

A national consensus is emerging against abusive litigation by patent trolls like Acacia and Plaintiff. Just this week, the Chief Judge of the Federal Circuit Court of Appeals published a scathing editorial in the New York Times, citing comments by the President of the United States and encouraging district judges to use Rule 11 and Section 285 against patent trolls:

> Section 285 of the Patent Act, as well as Rule 11 of the Federal Rules of Civil Procedure, give judges the authority they need to shift the cost burden of litigation abuse from the defendant to the troll...Judges know the [patent troll] routine all too well, and the law gives them the authority to stop it. **We urge them to do so**.

Randall R. Rader et al., *Make Patent Trolls Pay in Court*, The New York Times (June 4, 2013) (emphasis added), filed herewith as Exhibit 10 to the Robinson Declaration.

For each and all of the foregoing reasons, Defendants respectfully request that Plaintiff's suit be dismissed in its entirety and Defendants be awarded all of their attorneys' fees and costs.

4851-9430-7347.7

Dated:  June 5, 2013                     Respectfully submitted,


                                         */s/  William J. Robinson*

                                         William J. Robinson (pro hac vice)
                                         Jean-Paul Ciardullo (pro hac vice)
                                         Justin Sobaje (pro hac vice)
                                         FOLEY & LARDNER LLP
                                         555 South Flower Street, Suite 3500
                                         Los Angeles, CA 90071-2411
                                         wrobinson@foley.com
                                         jciardullo@foley.com
                                         jsobaje@foley.com

                                         Jason J. Keener (Ill. Bar No. 6280337)
                                         FOLEY & LARDNER LLP
                                         321 North Clark Street, Suite 2800
                                         Chicago, IL 60654-5313
                                         Telephone:  312.832.4500
                                         Facsimile:  312.832.4700
                                         Email:  jkeener@foley.com

                                         *Attorneys for Defendants Juno Online
                                         Services, Inc., NetZero, Inc., and Memory
                                         Lane, Inc.*

4851-9430-7347.7

## CERTIFICATE OF SERVICE

I, William J. Robinson, an attorney, hereby certify that on **June 24, 2013**, I caused the foregoing (UNREDACTED) MOTION FOR SANCTIONS UNDER RULE 11, along with supporting Declaration and Exhibits, to be filed with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

*/s/ William J. Robinson*
William J. Robinson

4851-9430-7347.7