**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE:   UNIFIED MESSAGING | § | MDL No. 2371  (ALL CASES) |
| SOLUTIONS, LLC | § | |
| PATENT LITIGATION | § | Master Docket No. 12 C 6286 (ALL CASES) |
| | § | |
| | § | Hon. Joan H. Lefkow |
| | § | |
| | § | |
| | § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS THAT THE
'141, '306, '313 AND '148 PATENTS ARE UNENFORCEABLE**

**INTRODUCTION**

As a result of UMS's recent conduct and admissions, the undersigned Defendants respectfully move for judgment on the pleadings that four of the five patents-in-suit are unenforceable, and for dismissal of those consolidated cases in which UMS has only asserted such unenforceable patents.

The four patents at issue in this motion—U.S. Patent Nos. 7,836,141 ("the '141 patent"), 7,895,306 ("the '306 patent"), 7,895,313 ("the '313 patent"), and 7,934,148 ("the '148 patent")—are all part of the same patent family and are continuations of patents relating back to, among others, U.S. Patent No. 6,350,066 ("the '066 Patent"). During prosecution of the patents at issue, the Patent Office determined that these family members essentially claimed the same invention, which is prohibited under established patent law. However, to address this issue, the patentee put the public on notice and promised the U.S. Patent & Trademark Office ("PTO") that each patent would be "enforceable only for and during such period that it and the prior patents are commonly owned." By law per the patentee's express words, this promise—what is known as a "terminal disclaimer"—extends to any "grantee, its successors and assigns." UMS does not (and cannot) dispute that it is subject to these disclaimers. UMS brings the instant suits purporting to be the exclusive licensee with "ownership of all substantial rights," *i.e.*, the owner-in-fact of the Terminally Disclaimed Patents with standing to sue in its own name. But to be able to enforce the Terminally Disclaimed Patents, UMS must also own the prior patents, including the '066 patent. It does not.

UMS has repeatedly and consistently emphasized that it has no ownership interest in that patent. In fact, during recent *Markman* proceedings before this Court, UMS disavowed any tie to the '066 patent and even implored this Court not to apply the claim construction agreed to by its

owner in another litigation. That UMS does not own the '066 patent is not in dispute. Advanced Messaging Technologies, Inc. ("AMT")—a different party that, as UMS made clear, has no privity with UMS—owns the '066 patent. AMT is an aggressive litigant in its own right, having alleged infringement of the '066 patent in multiple litigations in California and elsewhere, claiming it "owns by assignment, *the entire right*, title and interest in and to the '066 Patent, including the right to sue for past, present, and future infringements."

Based on the unequivocal positions taken by AMT and UMS in pleadings, and based on UMS's unwavering statements in open court about the separate ownership rights to the patents, the Court should dismiss the '141, '306, '313 and '148 patents from these cases as unenforceable.[1] Put simply, the Terminally Disclaimed Patents are unenforceable as a matter of law because UMS concedes that it has *no* ownership of the '066 patent.

## APPLICABLE LEGAL STANDARD

### MOTIONS FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C)

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may seek entry of judgment on the basis of the pleadings. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The Court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

The Court, however, need not limit its review to the four corners of the complaint. Courts may "take judicial notice of matters of public record," including terminal disclaimers in

---

[1] UMS only recently made the critical and dispositive admissions and disclosures that serve as the foundation for this motion (including, among other things, UMS's admissions during the recent claim construction hearing). This issue also was raised as part of the pending Rule 11 motion brought by Juno Online Services, Inc., et al. (Dkt. 536). While Defendants take no position on the procedural posture of that motion, Defendants reject UMS's position in the Rule 11 briefing that Defendants' have been silent on the terminal disclaimer issue and that such alleged silence demonstrates a lack of merit concerning the enforceability issue.

prosecution histories and recorded assignments, which are both public records at the PTO. *Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000). Additionally, the Court may take judicial notice of the *Markman* hearing that occurred on May 23 and 24, 2013 and its transcript, as well as pleadings in the California patent infringement actions. *See Kaempe v. Meyers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (holding that Court can take judicial notice of PTO assignment records); *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 192 n.4 (8th Cir. 1982) ("However, Vitek correctly states that this court may take judicial notice of Patent and Trademark Office documents."); *Green v. Warden*, *U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("Among these matters of which a court may take judicial notice are its own court documents and records." (*citing Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir.*)); U.S. ex rel. Robinson Rancheria Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"). [2]

### DOUBLE PATENTING & TERMINAL DISCLAIMERS

"Obviousness-type double patenting is a judicially-created doctrine designed to 'prevent claims in separate applications or patents that do not recite the "same" invention, but nonetheless claim inventions so alike that granting both exclusive rights would effectively extend the life of patent protection.'" *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013) (*quoting Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1373 (Fed. Cir. 2005)). The doctrine thus "prohibits the

---

[2] To the extent the Court believes that this motion requires consideration of materials outside the pleadings that cannot be judicially noticed, Defendants request the Court treat it as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See also* Fed. R. Civ. P. 12(d). The standards are otherwise identical. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993) (holding that when a Rule 12(c) motion is filed to dispose of the case on "the underlying merits," the "appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings").

issuance of claims in a second patent that are 'not patentably distinct from the claims of the first patent.'" *Id.* (*quoting In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985)).

Despite this prohibition, a party may nevertheless gain issuance of essentially obvious and overlapping patent claims by making a "terminal disclaimer." A terminal disclaimer acknowledges that the later-issued patent will not be enforceable beyond the term of the earlier patent. *See In re Van Ornum*, 686 F.2d 937, 943–44 (C.C.P.A. 1982) (terminal disclaimers "prevent unjustified timewise extension of the right to exclude granted by a patent").[3] More importantly here, "[a] terminal disclaimer, when filed to obviate a judicially created double patenting rejection in a patent application . . . must . . . (3) [i]nclude a provision that any patent granted on that application or any patent subject to the reexamination proceeding shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the judicially created double patenting." 37 CFR 1.321(c).

In order to prevent separate and potentially divergent litigation on patents that are not patentably distinct, the terminal disclaimer also requires that the earlier-issued and later-issued patents be ***commonly owned***, otherwise they are unenforceable. *In re Hubbell*, 709 F.3d at 1145 ("The second rationale is to prevent multiple infringement suits by different assignees asserting essentially the same patented invention."); *see also In re Van Ornum*, 686 F.2d 937, 944–48 (C.C.P.A. 1982) ("When a terminal disclaimer causes two patents to expire together[,] a situation is created which is tantamount for all practical purposes to having all the claims in one patent. Obviously, that thought contemplates common ownership of the two patents, which remains

---

[3] *See, e.g.,* Manual of Patent Examining Procedure ("MPEP") § 804.02; *see also* 35 U.S.C.A. § 253 ("[A]ny patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.")

common throughout the life of the patents. . . . . Upon this extensive review of the situation, we consider it desirable to tie both the termination and the ownership of the two patents together, as is required by § 1.321(b)"). Prohibiting separate enforcement of overlapping and related patents by different owners eliminates confusion and burden. Absent such a prohibition, multiple owners could advance divergent interpretations of identical patent claims, thereby unfairly distorting and broadening the scope of the patents beyond the intent of the PTO.

## BACKGROUND

### THE PROSECUTION OF TERMINALLY DISCLAIMED PATENTS

Of the five patents-in-suit asserted by UMS, four (the '141, '306, '313 and '148 patents) are subject to terminal disclaimers.[4] The terminal disclaimers in the relevant patents are found in their publicly available file histories of each patent, and have been attached as Exhibits A through D. For example, in the '148 patent, AMT made the following commitment:

> The owner hereby agrees that the instant patent shall be enforceable only for and during such period that it and the prior patents are commonly owned.

Ex. A.[5] The "prior patents" included the '066 patent, as well as the '141, '306, and '313 patents-in-suit. AMT further assured the PTO that its **"agreement runs with the instant patent and is binding on the grantee, its successors and assigns**." *Id.* (emphasis added); *see also* Exs. B–D (with similar language for the '141, '306, and '313 patents).

---

[4] As explained in the legal section, a terminal disclaimer is required when the Patent and Trademark Office (the "PTO") believes a patentee is attempting to prolong the term of a patent by trying to obtain claims in a second patent on an obvious modification of **the same invention**. *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985). The net effect of a "terminal disclaimer" is that the two patents will expire together and "a situation is created which is tantamount for all practical purposes to having all the claims in one patent." *In re Braithwraite*, 379 F.2d 594, 601 (C.C.P.A. 1967), *quoted with approval in In re Van Ornum & Stang*, 686 F.2d 937, 948 (Fed. Cir. 1982).

[5] Similarly, the terminal disclaimers for the '141, '306 and '313 patents provide that they "shall be enforceable only for and during such period that it and the prior patents and patent granted on said pending reference applications [including U.S. Patent No. 6,350,066] are commonly owned." Exs. B–D.

6

AMT made this promise to gain allowance of its patent applications, and to forestall later challenges to the validity of the four resulting patents. *See* Summary of Interview on Sept. 16, 2010, '141 patent (attached hereto as Ex. E) (discussing the substance of the interview and stating that AMT "file[d] Terminal Disclaimers to overcome obviousness-type double patenting."); *see also* Exs. B–D (titled "Terminal Disclaimer to Obviate a Double Patenting Rejection Over 'Prior' Patents and Over Pending 'Reference' Applications").

### UMS AND AMT'S SEPARATE ENFORCEMENT CAMPAIGNS

In March of 2011, UMS began an enforcement campaign under the patents-in-suit. This consolidated matter arises from a number of separate lawsuits involving over one hundred defendants against whom UMS asserts one or more of the patents-in-suit. In every complaint, UMS states it has "ownership of all substantial rights [in the asserted patents] . . . including the right to exclude others and to enforce, sue and recover damages for past and future infringement."[6] *See*, *e.g.*, First Am. Compl. (Dk. No. 120) at ¶¶ 21, 26, 31, and 36; *see also* Second Am. Compl. (Dk. No. 143) at ¶ 8. UMS thus alleges that it is the owner of the patents-in-suit.[7] Notably, UMS did not reference the '066 patent in its pleadings.

While UMS embarked on its litigation campaign, another entity, AMT, was embroiled in its own efforts to enforce the related, but earlier-issued, '066 patent in the Central District of California. In each of those actions, AMT alleges that it—not UMS—is the owner, by assignment, of "***the entire right***, title and interest in and to the '066 Patent, including the right to sue for past, present, and future infringements thereof." *See, e.g., Adv. Messaging Techs., Inc. v.*

---

[6] UMS asserts infringement under one or more of five patents against the various defendants. Typically, UMS accuses a particular defendant of infringing only the '148 patent, or in the alternative, all five patents.

[7] As explained below, a "party that has been granted all substantial rights" under a patent is, in fact, "considered the owner" of the patent. *See State Contracting & Eng'r Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1062 (Fed. Cir. 2003).

*EasyLink Servs. Int'l. Corp.,* Case No. 2:11-CV-04239 (C.D. Cal.), *First Am. Compl.* filed Mar. 9, 2012 (Dkt No. 44 at ¶9) (Ex. F-1) (emphasis added); *see also* Ex. F (collecting numerous complaints filed by AMT asserting and claiming ownership to the '066 patent). UMS is not a party or otherwise involved in those suits.

### THE *MARKMAN* PROCEEDINGS

As part of the claim construction process, Defendants advanced constructions consistent with stipulations made by AMT regarding the meaning of certain terms common to the Terminally Disclaimed Patents and the '066 patent. At the May 23, 2013 *Markman* Hearing, UMS unequivocally disavowed any ownership of the '066 patent. Instead, UMS claimed the right to assert different, broader claim constructions than those stipulated to by AMT (the '066 patent owner) in other litigations regarding identical claim terms in the '066 patent. UMS repeatedly denied any interest in the '066 patent:

> Defendants' only support is a prior stipulated construction. ***The different case, different parties, different patents.*** So in that California case, not with my client, ***but a previous patent owner***, there was a stipulation as to what this means -- what this term meant.

5/23/13 *Markman* Tr. at 60:9–13 (attached as Ex. G) (emphases added). This Court pointedly asked UMS, "[w]hy would Unified take a different position than the owner of the patent on this issue?" *Id.* at 74. UMS acknowledged that it was taking a position different from that of the ***owner*** of the '066 patent, explaining that AMT's position constrained the more expansive infringement allegations UMS seeks to press in this action. UMS declared that there was no privity between it and AMT. *Id.* at 75:4–76:2.

## ARGUMENT

I. **UMS'S ACTS AND ADMISSIONS MAKE CLEAR IT DOES NOT OWN THE '066 PATENT, RENDERING THE TERMINALLY DISCLAIMED PATENTS UNENFORCEABLE**

UMS does not and cannot dispute that it is subject to the terminal disclaimers in the '148, '141, '306 and '313 patents. Yet, UMS has directly and indirectly disavowed any ownership of the '066 patent, or privity with its owner. In fact, UMS has emphasized that the '066 patent is owned by a separate entity such that UMS is not subject to prior stipulations by that owner as to the scope of overlapping terms. UMS instead asks this Court to expand the scope of the inventions claimed in the patents-in-suit beyond that stipulated to by AMT for the '066 patent. The acts and admissions by UMS fly in the face of the terminal disclaimers and the policies they promote, and render the Terminally Disclaimed Patents unenforceable.

AMT's statements in litigations over the '066 patent in the District Court for the Central District of California are consistent with UMS's disavowal of ownership of '066 patent, including during *Markman* proceedings before this Court. AMT has repeatedly alleged that it alone is the owner, by assignment, of "***the entire right***, title and interest in and to the '066 Patent, including the right to sue for past, present, and future infringements thereof." *See, e.g., Adv. Messaging Techs., Inc. v. EasyLink Servs. Int'l. Corp.,* Case No. 2:11-CV-04239 (C.D. Cal.), *First Am. Compl.* filed Mar. 9, 2012 (Dkt No. 44 at ¶9) (Ex. F-1) (emphasis added); *see also* Ex. F (collecting numerous complaints filed by AMT asserting and claiming ownership to the '066 patent). UMS is not a party to or otherwise involved in those suits.

The evidence is overwhelming and irrefutable that UMS is not in compliance with the terminal disclaimers. UMS claims all substantial rights under the Terminally Disclaimed Patents, *i.e.*, that it owns those patents. *See State Contracting & Eng'r Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1062 (Fed. Cir. 2003) (*citing Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250

(Fed. Cir. 2000)) ("A party that has been granted all substantial rights under the patent *is considered the owner* regardless of how the parties characterize the transaction that conveyed those rights."); *see also Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359–60 (Fed. Cir. 2010) ("a patent may not have multiple separate owners . . . [e]ither the licensor did not transfer 'all substantial rights' to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement, or the licensor did transfer 'all substantial rights' to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes").  At the same time, UMS denies any interest in the '066 patent.  *See*, *e.g.*, 5/23/13 *Markman* Tr. (Ex. G) at 60:9–13 (refusing to be bound by the stipulation of the "previous patent owner" and current owner of the '066 patent because it was made in a "different case" with "different parties" and "different patents").

The Terminally Disclaimed Patents and the '066 patent therefore are not commonly owned.  Pursuant to established principles of patent law, and in light of AMT's promise to the PTO to secure the Terminally Disclaimed Patents, those patents are now unenforceable.[8]  *See*, *e.g.*, *Merck & Co., Inc. v. U.S. Int'l Trade Comm'n,* 774 F.2d 483, 485 (Fed. Cir. 1985) (enforcing provision in terminal disclaimer providing that the disclaimed patent would "expire immediately" if it ceased to be commonly owned with the prior patents).

---

[8] UMS thus lacks standing to assert infringement of the Terminally Disclaimed Patents.  To establish Article III standing, a plaintiff must show, inter alia, that it has suffered an "'injury in fact'—an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  This requirement applies to patent infringement suits as it does to all federal actions.  *See, e.g., Paradise Creations, Inc. v. UV Sales, Inc*., 315 F.3d 1304, 1308-10 (Fed. Cir. 2003).  Here, Plaintiff UMS has not shown such an injury for the Terminally Disclaimed Patents because an unenforceable patent cannot be infringed.  *See Email Link Corp. v. Treasure Island, LLC, et. al*, No. 2:11-cv-01433-ECR-GWF, 2012 WL 4482576, at *1 (D. Nev. Sept. 25, 2012) (dismissing the case because the asserted patent was unenforceable due to lack of common ownership of terminally disclaimed patents, *citing Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*, 774 F.2d 483, 485 (Fed. Cir. 1985)).  As such, all counts against the various Defendants asserting infringement of the Terminally Disclaimed Patents should be dismissed for lack of Article III standing.  *See, e.g., Voda v. Medtronic, Inc*., No. CIV-09-95-L (W.D. Okla. Aug. 17, 2011) (Ex. H); *LG Philips LCD Co. Ltd. v. Tatung et al,* No. CV 02-6775, slip op. at 10-12 (C.D. Cal. Sept. 21, 2005) (Ex. I) (holding that plaintiff lacked standing to assert patents because they were unenforceable pursuant to terminal disclaimers).

## II.   CREATIVE   LICENSING   CANNOT   SHIELD   UMS   FROM   THE CONSEQUENCES OF ITS ACTIONS

Defendants anticipate that in an effort to avoid its prior statements, UMS will point to its contract with AMT, as it did in response to the recently filed Rule 11 Motion. But actions speak louder than words. UMS has repeatedly made statements and admissions in judicial pleadings and in open court that leave no doubt that UMS does *not* commonly own the Terminally Disclaimed Patents and the '066 patent. Measured against the conduct and admissions of UMS and AMT, mere contract language is of no moment. *See*, *e.g.*, *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, No. 11-CV-246, 2013 WL 2351814, at *4 (S.D. Cal. May 24, 2013) ("where the subsequent conduct of parties is inconsistent with and clearly contrary to provisions of the written agreement, the parties' modification setting aside the written provisions will be implied"). To find otherwise would render any terminal disclaimer moot, as entities could collude to put in place an agreement to allow them to conduct themselves in violation of the terminal disclaimer without recourse.

UMS has filed over a hundred complaints based on the assertion that it is the owner-in-fact of the Terminally Disclaimed Patents. And, as UMS admitted repeatedly and represented directly to this Court, it does not have any ownership interest in the '066 patent. These are the relevant facts, and they require dismissal of this case. UMS should not be heard to argue that the language of its agreements is inconsistent with this conduct. This Court thus need not consider the merits of the UMS–AMT agreements. [9]

Even if considered, the UMS-AMT agreement does not save UMS here. In fact, UMS has emphasized in its response to the Rule 11 motion that it and AMT own nothing in

---

[9] Should UMS nonetheless attempt to interject the agreements into this issue, the result is no different. This Court may still grant Defendants' motion pursuant to Federal Rule of Civil Procedure 12(d).

common—that their interests in the patents are distinct, separate and wholly independent.[10] UMS attempts to argue that its arrangement with AMT nevertheless satisfies one of the policies underlying the terminal disclaimer requirement (*i.e.* prohibiting harassing suits by multiple patentees).[11] Defendants will demonstrate later in this brief how the agreement does not, in fact, preclude this evil. More importantly, however, the "common ownership" requirement cannot be met by anything other than actual, common ownership. *See In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013).

In *Hubbell*, the distinct owners of separate, but patently indistinct applications, sought to overcome a double-patenting rejection by promising that the patents would not be "separately enforced." The Federal Circuit rejected this solution, finding that the "common ownership" requirement of the regulation could not be circumvented through a mere promise to avoid the effects that "common ownership" is intended to remedy. *Id.* at 1148–49; *see also In re Van Ornum*, 686 F.2d at 944–48 ("When a terminal disclaimer causes two patents to expire together[,] a situation is created which is tantamount for all practical purposes to having all the claims in one patent. Obviously, that thought contemplates common ownership of the two patents, which remains common throughout the life of the patents.").

---

[10] The UMS-AMT agreements further confirm that the ownership of these patents is divided. The rights UMS purports to "own" in the '066 patent have nothing in common with the rights purportedly "owned" by AMT. The same is true of each of the Terminally Disclaimed Patents. That these agreements may give UMS the same fractional rights in each of these patents, hardly establishes that each of the patents themselves is under common ownership. Similarly, the fact that UMS and AMT may have something in common—namely, they each have interests in these various patents—is irrelevant.

[11] In doing so, UMS is forced to take multiple inconsistent positions with respect to the legal effect of its agreement, arguing that it is all things at all times. To evade judicial estoppel on claim construction, UMS argued the '066 patent is owned by a different entity not in privity with UMS. Then to avoid Rule 11 sanctions, UMS claims it is a "bare" licensee (Dkt. No. 552 at 3), but also inconsistently that it "jointly and commonly" owns the patents with AMT. *Id.*; *see also id.* at 7–10. Several pages later, UMS claims to be like the party in *King Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, Case No. 05-3855-JAP, 2006 WL 3933091 (D.N.J. Jan. 22, 2007), which was an exclusive licensee but without all substantial rights. Dkt. No. 552 at 5–7. Yet later, UMS shifts positions again claiming to have "an exclusive license through a specified territory." *Id.* at 10.

Thus, the Federal Circuit has held that one cannot satisfy the common ownership requirement by any means other than having a common owner for all patents related to the terminal disclaimer. Ultimately, no amount of creativity can conceal UMS and AMT's express violation of the intent and purpose of the terminal disclaimers. UMS's vehement and repeated attempts to disown the stipulations made by AMT concerning the scope of the claimed invention belie the assertion that each of these patents has a common owner. [12]

## III. THE TERMINALLY DISCLAIMED PATENTS MUST BE FOUND UNENFORCEABLE TO PROTECT THE PUBLIC

The patentee's promise to the PTO was not just a formality. It was, in fact, the *quid pro quo* for the issuance of the asserted patents. In exchange for the terminal disclaimer, AMT was allowed to overcome an obviousness-type double patenting rejection designed to "prohibit[] the issuance of claims in a second patent that are 'not patentably distinct from the claims of the first patent.'" *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985).

The Patent Office elicited the patentee's agreement that it would not split the ownership of these patents—a circumstance that risks conflicting and divergent enforcement by distinct, separate plaintiffs suing on what were deemed patentably indistinct claims. While it is not necessary to prove such conduct in order to find that the terminal disclaimer has been violated and the patents unenforceable, UMS's conduct demonstrates the very problem terminal disclaimers sought to avoid. Spurning that earlier commitment, UMS now seeks a broader scope for the patents-in-suit than was stipulated to by the owner of the '066 patent. To its credit, UMS was frank concerning its motives:

---

[12] This is not the first time UMS's parent, Acacia, has attempted to disregard the requirements of a terminal disclaimer. *See Email Link Corp. v. Treasure Island, LLC*, Case No. 2:11–CV–01433, 2012 WL 4482576, at *1–5 (D. Nev. Sept. 25, 2012) (finding the asserted patent unenforceable because the terminal disclaimer had been violated where Acacia split ownership of the patent portfolio between two subsidiaries).

> THE COURT: Why would Unified take a different position than the owner than of the patent on this issue?
>
> MR. SIMON: Because I believe they are going to try and bring in an expert and say using that definition they don't infringe.

*Markman* Tr. (Ex. G) at 74; *see also* 75:4–18 (arguing to the Court that judicial estoppel does not apply, that Plaintiff is not in privity with AMT, and that Plaintiff can advocate for claim constructions different from those to which AMT stipulated in the California actions); *id.* at 74:11–75:3 (UMS counsel explaining that it could not accept AMT's stipulations concerning the scope of these limitations because it would lead to arguments that defendants targeted by UMS do not infringe). This is the precise situation that terminal disclosures are meant to avoid (*i.e.*, the issuance of a second, related patent that will be enforced by a different entity that advances conflicting claim constructions). In other words, the meaning of identical words in related patents may depend upon whether a defendant has been sued by UMS or by AMT. This was the very injustice the terminal disclaimer was meant to prevent.

Moreover, to the extent UMS points to its licensing agreement with AMT, contrary to its assertions, its arrangement fails to protect the public from "multiple infringement suits by different assignees asserting essentially the same patented invention"; thus defying the public policy behind obviousness-type double patenting and terminal disclaimers. *See In re Hubbell*, 709 F.3d at 1145. According to the agreement, a party may be subject to suits by both UMS and AMT. Under section 2.7 of the agreement, AMT may control litigation against a party and sue that party on the '066 patent in certain circumstances, such as when that party has brought suit against AMT. The fact that such a party may also be a "Covered Entity" against which UMS has the right to bring an action for infringement of the terminally disclaimed patents does not, according to the contract language, appear to preclude further suit by AMT. In addition, the agreement also appears to grant AMT the right to sue "Covered Entities" under the '066 patent

when all rights to the patents automatically revert back to AMT, which will happen whenever UMS may unilaterally decide to conclude its licensing and enforcement efforts against Defendants.

Accordingly, UMS's and AMT's conduct and admissions confirm that ownership has been split in violation of the terminal disclaimers, and that the Terminally Disclaimed Patents are unenforceable.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss the cases in which only the Terminally Disclaimed Patents are asserted on the grounds that the Terminally Disclaimed Patents are unenforceable (*i.e.*, the cases filed against Orbitz, LLC, Scottrade, Inc., Groupon, Inc., United Air Lines, Inc., and Government Employees Insurance Company and GEICO Advantage Insurance Company). In those cases where the Defendants are accused of infringing patents other than the Terminally Disclaimed Patents, the Defendants respectfully request that the Terminally Disclaimed Patents be dismissed from those actions as unenforceable.

| Dated: July 3, 2013 | Respectfully submitted, |
| --- | --- |
| | By: */s/ Kal K. Shah*<br>Kal K. Shah<br>THOMPSON COBURN LLP<br>55 East Monroe Street<br>Chicago, IL 60603<br>Tel: 312.580.2338<br>KShah@thompsoncoburn.com<br><br>Anthony F. Blum<br>THOMPSON COBURN, LLP<br>One US Bank Plaza<br>St. Louis, MO 63101 |

|  | Tel: 314.552.6291<br>ablum@thompsoncoburn.com<br><br>**Attorneys for Defendant ORBITZ, LLC** |
|---|---|
| By: /s/ Deanna R. Swits<br>Deanna R. Swits (Ill. Bar No. 6287513)<br>dswits@nixonpeabody.com<br>Jason T. Kunze (Ill. Bar No. 6300271)<br>jkunze@nixonpeabody.com<br>Nixon Peabody LLP<br>300 South Riverside Plaza, 16th Floor<br>Chicago, IL 60606<br>Telephone: 312-425-3900<br>Facsimile: 312-425-3909<br><br>Jason C. Kravitz (Mass. Bar No. 565904)<br>(admission pro hac vice to be requested)<br>jkravitz@nixonpeabody.com<br>Nixon Peabody LLP<br>100 Summer Street<br>Boston, MA 02110-2131<br>Telephone: 617-345-1000<br>Facsimile: 617-345-1300<br><br>**Attorneys for Defendant STATE STREET CORPORATION** | By: /s/ Lee F. Johnston<br>Lee F. Johnston (admitted pro hac vice)<br>Email: johnston.lee@dorsey.com<br>Case Collard<br>Email: collard.case@dorsey.com<br>DORSEY &WHITNEY LLP<br>1400 Wewatta Street, Suite 400<br>Denver, CO 80202<br>Telephone: (303) 629-3400<br>Facsimile: (303) 629-3450<br><br>**Attorneys for Defendant AMERIPRISE FINANCIAL INC.** |
| By: /s/ Rick L. Rambo<br>Rick L. Rambo, Lead Attorney<br>State Bar No. 00791479<br>rrambo@morganlewis.com<br>Thomas R. Davis<br>State Bar No. 24055384<br>tdavis@morganlewis.com<br>MORGAN, LEWIS & BOCKIUS LLP<br>1000 Louisiana Street, Suite 4000<br>Houston, Texas 77002<br>713.890.5000 Telephone<br>713.890.5001 Facsimile<br><br>**Attorneys for Defendant CEQUEL COMMUNICATIONS, LLC D/B/A SUDDENLINK** | By: /s/ M. Dru Montgomery<br>J. Thad Heartfield<br>(Texas Bar No. 09346800)<br>M. Dru Montgomery<br>(Texas Bar No. 24010800)<br>THE HEARTFIELD LAW FIRM<br>2195 Dowlen Road<br>Beaumont, TX 77706<br>Tel: 409.866.3318<br>Fax: 409.866.5789<br>thad@jth-law.com<br>dru@jth-law.com<br><br>**Attorneys for Defendants CONN'S, INC. AND CONN APPLIANCES, INC.** |

| | |
|---|---|
| ***COMMUNICATIONS*** | |
| By: */s/ Thomas L. Duston*<br>Thomas L. Duston<br>Paul B. Stephens<br>Scott A. Sanderson<br>MARSHALL, GERSTEIN & BORUN LLP<br>6300 Willis Tower<br>233 South Wacker Drive<br>Chicago, IL 60606-6357<br>Tel: 312.474.6300<br>tduston@marshallip.com<br>pstephens@marshallip.com<br>ssanderson@marshallip.com<br><br>***Attorneys for Defendant UNITED AIR LINES, INC.*** | By: */s/ Thomas L. Duston*<br>Thomas L. Duston<br>Kevin D. Hogg<br>Scott A. Sanderson<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 South Wacker Drive<br>6300 Willis Tower<br>Chicago, IL 60606-6357<br>Tel: 312.474.6300<br>tduston@marshallip.com<br>khogg@marshallip.com<br>ssanderson@marshallip.com<br><br>***Counsel for Defendant GROUPON, INC.*** |
| By: */s/ Jeffrey G. Mote*<br>Jeffrey G. Mote<br>Matthew J. Levinstein<br>GREENBERG TRAURIG, LLP<br>77 West Wacker Drive<br>Suite 3100<br>Chicago, IL 60601<br>T: (312) 456-8400 / F: (312) 456-8435<br>motej@gtlaw.com<br>levinsteinm@gtlaw.com<br><br>Jerry Fellows<br>GREENBERG TRAURIG, LLP<br>2375 East Camelback Road, Suite 700<br>Phoenix, Arizona 85016<br>T: (602) 445-8000 / F: (602) 445-8100<br>fellowsj@gtlaw.com<br><br>***Attorneys for Defendant CUPID PLC.*** | By: */s/ Galyn Gafford*<br>Galyn Gafford<br>Michael Scott Fuller<br>Roger B. Cowie<br>LOCKE LORD BISSELL & LIDDELL LLP<br>2200 Ross Avenue, Suite 2200<br>Dallas, TX 75201-6776<br>Tel: 214.740.8614<br>Fax: 214.740.8800<br>ggafford@lockelord.com<br>sfuller@lockelord.com<br>rcowie@lockelord.com<br><br>Gregory Thomas Casamento<br>LOCKE LORD LLP (NYC)<br>3 World Financial Center, 20th Floor<br>New York, NY 10001<br>Tel: 212.415.8600<br>Fax: 212.303.2754<br>gcasamento@lockelord.com<br><br>***Attorneys for Defendants HSBC NORTH AMERICA***<br>***HOLDINGS INC. AND HSBC USA INC./HSBC BANK***<br>***USA, NATIONAL ASSOCIATION*** |
| /s/ D. Stuart Bartow | By: */s/ Edward Pak* |

| | |
|---|---|
| Jeffrey Stone (SBN 6189590)<br>Matthew Gryzlo (SBN 6243042)<br>Amol Parikh (SBN 6285077)<br>MCDERMOTT WILL &EMERY LLP<br>227 West Monroe Street<br>Chicago, Illinois 60606<br>Tel: 312.372.2000<br>Fax: 312.984.7700<br>jstone@mwe.com<br>mgryzlo@mwe.com<br>amparikh@mwe.com<br><br>Yar Chaikovsky<br>D. Stuart Bartow<br>Bryan James<br>MCDERMOTT WILL & EMERY LLP<br>275 Middlefield Road, Suite 100<br>Menlo Park, CA 94025-4004<br>(650) 815-7400<br>(650) 815-7401 – fax<br>ychaikovsky@mwe.com<br>sbartow@mwe.com<br>bjames@mwe.com<br><br>**Counsel for Defendant YAHOO! INC.** | Edward Pak<br>Email: edward@212media.com<br>[212]Media, LLC<br>460 Park Avenue South, 4th Floor<br>New York, NY 10016<br>Telephone: (646) 660-9436<br>Facsimile: (646) 349-4013<br><br>***Attorney for Defendant SPORTSVITE, LLC*** |
| By: */s/ Henry Huang*<br>Henry Huang (admitted pro hac vice)<br>Ropes & Gray LLP<br>700 12th St. NW Suite 900<br>Washington, DC 20005<br>(202) 508-4600<br>henry.huang@ropesgray.com<br><br>***Attorney for Defendant Branch Banking and Trust Company*** | By: */s/ Benjamin J. Bradford*<br>Reginald J. Hill<br>Benjamin J. Bradford<br>JENNER & BLOCK LLP<br>353 N. Clark Street<br>Chicago, Illinois 60654-3456<br>Tel.: (312) 222-9350<br>Fax: (312) 527-0484<br><br>***Attorney for Defendant BMO HARRIS BANK N.A.*** |
| By: */s/ Beverly A. Marsh*<br>Jeffrey S. Standley<br>F. Michael Speed, Jr.<br>Beverly A. Marsh<br>STANDLEY LAW GROUP LLP<br>6300 Riverside Drive<br>Dublin, Ohio 43017 | By: */s/ Jason M. Schwent*<br>Jason M. Schwent<br>Thomas E. Douglass<br>Anthony F. Blum<br>THOMPSON COBURN, LLP<br>One US Bank Plaza<br>St. Louis, MO 63101 |

| | |
|---|---|
| Tel: (614) 792-5555<br>Fax: (615) 792-5536<br>jstandley@standleyllp.com<br>mspeed@standleyllp.com<br>bmarsh@standleyllp.com<br><br>**Attorneys for Defendant HUMANA INC.** | Tel: 314.552.6291<br>Fax: 314.552.7291<br>jschwent@thomascoburn.com<br>tdouglass@thompsoncoburn.com<br>ablum@thompsoncoburn.com<br><br>**Attorneys for Defendant SCOTTRADE, INC.** |
| By: /s/ *Russell S. Jones, Jr.*<br>Russell S. Jones, Jr. (N.D. IL #30814)<br>POLSINELLI SHUGHART PC<br>Twelve Wyandotte Plaza<br>120 W. 12th Street<br>Kansas City, MO 64105<br>(816) 421-3355<br>Fax No.: (816) 374-0509<br>rjones@polsinelli.com<br><br>Jay E. Heidrick<br>POLSINELLI SHUGHART PC<br>6201 College Blvd., Suite 500<br>Overland Park, KS 66211<br>(913) 234-7506<br>Fax No. (913) 451-6205<br>jheidrick@polsinelli.com<br><br>**Attorneys for SPRINT NEXTEL CORPORATION** | By: /s/ *Norwood Jameson*<br>Rachael G. Pontikes (#6275709)<br>rgpontikes@duanemorris.com<br>DUANE MORRIS LLP<br>190 South LaSalle Street<br>Suite 3700<br>Chicago, Illinois 60603<br>(312) 499-6757 (Telephone)<br>(312) 277-6903 (Facsimile)<br><br>L. Norwood Jameson (admitted pro hac vice)<br>(GA Bar No. 003970)<br>Matthew C. Gaudet (admitted pro hac vice)<br>(GA Bar No. 287789)<br>John R. Gibson (admitted pro hac vice)<br>(GA Bar No. 454507)<br>wjameson@duanemorris.com<br>mcgaudet@duanemorris.com<br>jrgibson@duanemorris.com<br>1075 Peachtree Street NE, Suite 2000<br>Atlanta, Georgia 30309<br>(404) 253-6900 (Telephone)<br>(404) 253-6901 (Facsimile)<br><br>**Attorneys For Defendants COXCOM, LLC AND EARTHLINK, INC.** |
| By: /s/ *Lauren K. Schwartz*<br>KIRKLAND & ELLIS LLP<br>Brian D. Sieve, P.C.<br>Email: brian.sieve@kirkland.com<br>Craig D. Leavell<br>mail: craig.leavell@kirkland.com<br>Lauren K. Schwartz<br>Email: lauren.schwartz@kirkland.com<br>300 North LaSalle<br>Chicago, IL 60654<br>(312) 862-2000<br>**Attorneys for Defendant FIRST** | By: /s/ *Lauren K. Schwartz*<br>Jeffrey G. Mote<br>Matthew J. Levinstein<br>GREENBERG TRAURIG, LLP<br>77 West Wacker Drive<br>Suite 3100<br>Chicago, IL 60601<br>T: (312) 456-8400 / F: (312) 456-8435<br>motej@gtlaw.com<br>levinsteinm@gtlaw.com<br><br>Jerry Fellows |

| **TENNESSEE BANK NATIONAL ASSOCIATION** | GREENBERG TRAURIG, LLP<br>2375 East Camelback Road, Suite 700<br>Phoenix, Arizona 85016<br>T: (602) 445-8000 / F: (602) 445-8100<br>fellowsj@gtlaw.com<br><br>**Attorneys for Defendants FRIENDFINDER NETWORKS INC. AND VARIOUS, INC.** |
|---|---|
| By: */s/ Timothy J. Carroll*<br>Howard Cabot<br>PERKINS COIE LLP<br>2901 North Central Avenue, Suite 2000<br>Phoenix, AZ 85012<br>Tel: 602.351.8000<br><br>Timothy J. Carroll<br>Steven M. Lubezny<br>PERKINS COIE LLP<br>131 South Dearborn Street, Suite 1700<br>Chicago, IL 60603<br>Tel: 312.324.8400<br><br>Manny Caixeiro<br>PERKINS COIE LLP<br>30 Rockefeller Center, 25th Floor<br>New York, NY 10112-0085<br>Tel: 212.262.6900<br><br>**Attorneys for Defendants THE VANGUARD GROUP,<br>INC. AND VANGUARD MARKETING CORPORATION** | By: */s/ Rick L. Rambo*<br>Rick L. Rambo, Lead Attorney<br>State Bar No. 00791479<br>rrambo@morganlewis.com<br>Thomas R. Davis<br>State Bar No. 24055384<br>tdavis@morganlewis.com<br>MORGAN, LEWIS & BOCKIUS LLP<br>1000 Louisiana Street, Suite 4000<br>Houston, Texas 77002<br>713.890.5000 Telephone<br>713.890.5001 Facsimile<br><br>**Attorneys for Defendant WINDSTREAM CORPORATION** |
| By: */s/ Rick L. Rambo*<br>Rick L. Rambo, Lead Attorney<br>State Bar No. 00791479<br>rrambo@morganlewis.com<br>Thomas R. Davis<br>State Bar No. 24055384<br>tdavis@morganlewis.com<br>MORGAN, LEWIS & BOCKIUS LLP<br>1000 Louisiana Street, Suite 4000<br>Houston, Texas 77002<br>713.890.5000 Telephone<br>713.890.5001 Facsimile | By: */s/ Brian D. Roche*<br>Brian D. Roche<br>Jennifer Yule DePriest<br>Reed Smith LLP<br>10 South Wacker Drive<br>Chicago, Ill 60606<br>Telephone: 312.207.1000<br>Facsimile: 312.207.6400<br>Email: broche@reedsmith.com<br>Email: jdepriest@reedsmith.com<br><br>David T. Pollock (application to appear pro hac |

| | |
|---|---|
| Scott D. Sherwin<br>ARDC No. 6293788<br>ssherwin@morganlewis.com<br>MORGAN, LEWIS & BOCKIUS LLP<br>77 West Wacker Drive, Suite 500<br>Chicago, IL 60601<br>(312) 342-1789 Telephone<br>(312) 324-1001 Facsimile<br><br>***Attorneys for Defendants PNC BANK, N.A., AND RBC BANK (USA)*** | vice pending)<br>Reed Smith LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105-3659<br>Telephone: 415.543.8700<br>Facsimile: 415.391.8269<br>Email: dpollock@reedsmith.com<br><br>***Attorneys for Defendant GENERAL ELECTRIC CAPITAL SERVICES, INC.*** |
| By: */s/ Lisa K. Nguyen*<br>Nicholas J. Siciliano<br>LATHAM & WATKINS, LLP<br>233 South Wacker Drive, Suite 5800<br>Chicago, IL 60606<br>Telephone: +1.312.777.7021<br>E-Mail: nicholas.siciliano@lw.com<br><br>Richard G. Frenkel<br>(Admitted Pro Hac Vice)<br>Lisa K. Nguyen<br>(Admitted Pro Hac Vice)<br>LATHAM & WATKINS, LLP<br>140 Scott Drive<br>Menlo Park, CA 94025<br>Telephone: +1.650.328.4600<br>E-Mail: rick.frenkel@lw.com<br>E-Mail: lisa.nguyen@lw.com<br><br>***Attorneys for Defendant BANCORPSOUTH, INC.*** | By: */s/ Lisa K. Nguyen*<br>Nicholas J. Siciliano<br>LATHAM & WATKINS, LLP<br>233 South Wacker Drive, Suite 5800<br>Chicago, IL 60606<br>Telephone: +1.312.777.7021<br><br>Matthew J. Moore<br>(Admitted as Pro Hac Vice)<br>LATHAM & WATKINS, LLP<br>555 Eleventh Street, N.W., Suite 1000<br>Washington, D.C. 20004-1304<br>Telephone: +1.202.637.2278<br><br>Clement J. Naples<br>(Admitted as Pro Hac Vice)<br>LATHAM & WATKINS, LLP<br>885 Third Avenue<br>New York, NY 10022-4834<br>Telephone: +1.212.906.1331<br><br>Lisa Nguyen<br>(Admitted as Pro Hac Vice)<br>LATHAM & WATKINS, LLP<br>140 Scott Drive<br>Menlo Park, CA 94025<br>Telephone: +1.650.470.4848<br><br>***Attorneys for Defendants GOVERNMENT EMPLOYEES INSURANCE COMPANY AND GEICO ADVANTAGE INSURANCE COMPANY*** |
| By: */s/ Steven J. Reynolds*<br>Steven J. Reynolds<br>(Illinois State Bar No. 6293634) | _____*/s/ D. Stuart Bartow*_____<br>Jeffrey Stone (SBN 6189590)<br>Matthew Gryzlo (SBN 6243042) |

| | |
|---|---|
| steven.reynolds@dlapiper.com<br>DLA PIPER LLP (US)<br>203 North LaSalle Street, Suite 1900<br>Chicago, Illinois 60601<br>T. 312.368.3467<br>F. 312.630.6352<br><br>John M. Guaragna (pro hac vice to be filed)<br>(Texas State Bar No. 24043308)<br>john.guaragna@dlapiper.com<br>Brian K. Erickson (pro hac vice to be filed)<br>(Texas State Bar No. 24012594)<br>brian.erickson@dlapiper.com<br>DLA PIPER LLP (US)<br>401 Congress Avenue, Suite 2500<br>Austin, Texas 78701-3799<br>T. 512.457.7000<br>F. 512.457.7001<br><br>***Attorneys for Defendants AMERITRADE HOLDING CORPORATION AND TD AMERITRADE, INC.*** | Amol Parikh (SBN 6285077)<br>MCDERMOTT WILL &EMERY LLP<br>227 West Monroe Street<br>Chicago, Illinois 60606<br>Tel: 312.372.2000<br>Fax: 312.984.7700<br>jstone@mwe.com<br>mgryzlo@mwe.com<br>amparikh@mwe.com<br><br>Yar Chaikovsky<br>D. Stuart Bartow<br>Bryan James<br>MCDERMOTT WILL & EMERY LLP<br>275 Middlefield Road, Suite 100<br>Menlo Park, CA 94025-4004<br>(650) 815-7400<br>(650) 815-7401 – fax<br>ychaikovsky@mwe.com<br>sbartow@mwe.com<br>bjames@mwe.com<br><br>**Counsel for Defendant TWITTER INC.** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 3rd day of July, 2013.

/s/ *Anthony F. Blum*
Anthony F. Blum