**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | UNIFIED MESSAGING SOLUTIONS LLC PATENT LITIGATION | MDL No. 2371 <br><br> Master Docket No.  12 C 6286 <br> ALL CASES <br><br> Hon. Joan H. Lefkow |

**PLAINTIFF UNIFIED MESSAGING SOLUTIONS LLC'S OPPOSITION
TO DEFENDANTS' [MISNAMED] MOTION FOR JUDGMENT ON THE PLEADINGS[1]**

---

[1] Defendants' motion clearly requires consideration of materials outside the pleadings, including the operative October 29, 2010 Agreement between Advanced Messaging Technologies and Unified Messaging Solutions that Defendants specifically discuss in their brief (at pp. 11-15). Thus, Defendants' motion is properly treated as one for summary judgment under Rule 56.  *See* FED. R. CIV. P. 12(d).  Defendants effectively concede this point at p. 4, n.2 in their brief.

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARD.......................................................................................................... 1

III. ARGUMENT........................................................................................................................ 2

    A. AMT and Unified Messaging jointly and commonly own all of the patents in the portfolio (in undivided shares), such that there is no breach of common ownership. ... 2

    B. Defendants' unenforceability theory here is different; but no better. ........................... 3

    C. *Markman* hearing comments are a red herring. ............................................................ 6

    D. Unified Messaging's litigation is consistent with the letter and spirit of terminal disclaimers. ..................................................................................................................... 8

IV. CONCLUSION................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010)..................................................................................................9

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,
   No. 11-CV-246, 2013 U.S. Dist. LEXIS 74072 (S.D. Cal. May 24, 2013)........................5, 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...............................................................................................................1, 2

*Boston Scientific Corp. v. Micrus Corp.*,
   556 F. Supp. 2d 1045 (N.D. Cal. 2008) .................................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...................................................................................................................1

*Comtech EF Data Corp. v. Radyne Corp.*,
   No. CV-06-1132, 2007 U.S. Dist. LEXIS 97038 (D. Ariz. Oct. 12, 2007)........................7, 8

*Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.*,
   No. 07-2768, 2011 U.S. Dist. LEXIS 27505 (E.D. Pa. Mar. 17, 2011)..............................7, 8

*Diamond Woodworks, Inc. v. Argonaut Ins. Co.*,
   109 Cal. App. 4th 1020 (Cal. App. 4th Dist. 2003) ...........................................................5, 6

*Email Link Corp. v. Treasure Island, LLC*,
   No. 2:11-cv-01433, 2012 U.S. Dist. LEXIS 138042 (D. Nev. Sept. 25, 2012)......................3

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995)...................................................................................................7

*In re Hubell*,
   709 F.3d 114 (Fed. Cir. 2013)...............................................................................................8, 9

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001).................................................................................................9

*International Gamco, Inc. v. Multimedia Games, Inc.*,
   504 F.3d 1273 (Fed. Cir. 2007) ............................................................................................ 3, 9

*Lucent Tech., Inc. v. Gateway, Inc.*,
   543 F.3d 710 (Fed. Cir. 2008) .................................................................................................. 3

*Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*,
 774 F.2d 483 (Fed. Cir. 1985) ......................................................................................... 2

*Morrow v. Microsoft Corp.*,
 499 F.3d 1332 (Fed. Cir. 2007) ....................................................................................... 9

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*,
 No. C 04-4675, 2006 U.S. Dist. LEXIS 13243 (N.D. Cal. Mar. 24, 2006) ..................... 8

*Ultradent Prods., Inc. v. Hayman*,
 No. 00-13402, 2002 WL 34477127 (C.D. Cal. Jan. 11, 2002) ........................................ 7

**Statutes**

CAL. CIV. CODE §1559 (2013) .................................................................................................... 5

FED. R. CIV. P. 56(a) ................................................................................................................... 1

**I.     INTRODUCTION**

The notion that Plaintiff Unified Messaging has somehow "disavowed" its interest in the '066 patent is nonsense. The contract between AMT and Unified Messaging grants Unified Messaging an exclusive license in the subject patent portfolio that includes, among others, the '066 patent and the patents-in-suit.

Specifically, Unified Messaging holds an exclusive, territorial license to the portfolio that covers **all patented subject matter** and permits it to enforce **any** patent in the portfolio against a subset of infringers called "Covered Entities." Nothing that Unified Messaging has said or done changes this fact. And nothing changes the fact that Unified Messaging's interest in the patents is **undivided** from AMT.

As discussed extensively in Unified Messaging's Opposition to UOL's pending Rule 11 Motion,[2] owning rights in all patented subject matter is the **decisive** criterion when analyzing (i) whether AMT and Unified Messaging commonly own the patents for purposes of sustaining terminal disclaimers, and (ii) whether Unified Messaging has standing to sue for patent infringement in its own name.

**II.    LEGAL STANDARD**

Summary judgment is appropriate only when there is no genuine issue as to any material fact. FED. R. CIV. P. 56(a). Demonstrating the absence of a genuine issue as to any material fact is the burden borne by the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] *See* Dkt. No. 552.

1

In assessing a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. And as long as there appears to be support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Id.* at 250.

## III. ARGUMENT

### A. AMT and Unified Messaging jointly and commonly own all of the patents in the portfolio (in undivided shares), such that there is no breach of common ownership.

In order to violate a terminal disclaimer (and thereby render a patent unenforceable), ownership of the terminally disclaimed patent and the patent to which the disclaimer is made must be split. *See Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*, 774 F.2d 483, 485 (Fed. Cir. 1985). The **only** way this happens is for one person (or entity) to own, outright, one patent, and another person (or entity) to own, outright, the other. *See, e.g., id.* No other form of divided ownership potentially violative of a terminal disclaimer exists. The reasons for this are particularly relevant to UOL's unenforceability theory and are, thus, examined in greater detail in Unified Messaging's Opposition to UOL's Rule 11 Motion.

Recall UOL argues that AMT and Unified Messaging divided ownership (e.g., took fractional, non-overlapping interests) in each of the patents and, in so doing, violated certain terminal disclaimers. Taking a **divided ownership** interest in a particular patent (or patents) is a legal impossibility, however.

As Unified Messaging has explained,[3] valid assignments of patent rights convey **undivided ownership** interests in entire patents. If the assignment does not convey undivided ownership, then it is **always relegated to bare license status**. In other words, it is **impossible to**

---

[3] *See* Unified Messaging Opposition, Dkt. No. 552, at Sections III.B. and III.C.

**divide ownership** interests in a patent. Either the assignment is properly categorized as one of three recognized, valid types of assignments and amounts to outright patent ownership / joint, undivided ownership. *See Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 720-21 (Fed. Cir. 2008). Or an ostensible assignment is merely a license — because it purports to divide patent ownership by subject matter. *See id.*; *see also International Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1278 (Fed. Cir. 2007). Under current law, it must be one or the other.[4]

Thus, Unified Messaging is either an exclusive, territorial licensee with rights covering all subject matter in all patents (a valid assignment type); or it has no ownership interest (and is merely a licensee). Unified Messaging maintains that the former scenario applies. Its interest in the subject patents involves the <u>entirety</u> of the patents' subject matter. This is indisputable, and no Defendant argues (or can argue) otherwise.

In any event, it <u>cannot</u> be the case that AMT and Unified Messaging divided the ownership in each of the patents in the portfolio so as to dissolve common ownership and, by extension, violate the terminal disclaimers. To find otherwise would require this Court to upset longstanding legal principles and make new law.[5]

### B. Defendants' unenforceability theory here is different; but no better.

Recognizing the folly of UOL's divided ownership arguments, Defendants here fabricate a new theory premised upon splitting patent ownership by entire patents. In so doing, they are

---

[4] For this reason, UOL resigns itself to the <u>suggestion</u> that AMT and Unified Messaging intended to divide ownership in the patents and, equitably, should be precluded from asserting the patents-in-suit. *See* Dkt. No. 565 (UOL Reply) at pp. 10-12.

[5] It bears mention that both UOL and Defendants here cite in briefing to *Email Link Corp. v. Treasure Island, LLC*, No. 2:11-cv-01433, 2012 U.S. Dist. LEXIS 138042 (D. Nev. Sept. 25, 2012) as supportive of their terminal disclaimer positions. In *Email Link*, however, whole patents from a portfolio were split between sibling subsidiaries of Acacia Research Group. As discussed at length, those are not the facts at bar. *Email Link* appears to be cited solely to create an air of impropriety where none exists.

forced to ignore the express terms of the AMT-Unified Messaging contract and argue that Unified Messaging's conduct, post-contract, renders the contract meaningless.

Specifically, Defendants point to standing-related allegations in various AMT and Unified Messaging Complaints. On the one hand, AMT typically alleges that it has all substantial rights in the '066 patent necessary to bring suit in its own name. On the other hand, Unified Messaging makes similar allegations pertaining to its interest in the five patents-in-suit.

Defendants suggest that such recitals are tantamount to proclamations of unequivocal ownership of the respective patents, and that such is "overwhelming and irrefutable" evidence "that UMS is not in compliance with the terminal disclaimers."[6] They say that the recitals are "admissions," and when "measured against" such admissions, "mere contract language is of no moment."[7]

As a threshold matter, the standing allegations in the referenced Complaints are accurate: Unified Messaging alleges that it maintains "ownership of all substantial rights … including the right to exclude others and to enforce, sue and recover damages for past and future infringement." This statement is verifiably true with respect to each and every Defendant in a Unified Messaging suit. Such Defendants are Covered Entities, and no one else but Unified Messaging has the right to challenge them for their infringements.[8] The same goes for AMT when asserting its rights relative to the defendants in its actions.

To this day, Unified Messaging has the right to assert the '066 patent (against Covered Entities) if, and when, it chooses to do so. The same goes for AMT relative to the related patents before this Court (against persons other than Covered Entities). Yet Defendants postulate that

---

[6] *See* Defendants' Brief, at p. 9.
[7] *Id*. at p. 11.
[8] *See* Nelson Decl., Exh. 1 (AMT-Unified Messaging contract) at §2.2.

"actions speak louder than words"[9] and cite a single case from the Southern District of California for the proposition that when "subsequent conduct of parties is inconsistent with and clearly contrary to provisions of [a] written agreement, the parties' modification setting aside the written provisions will be implied." *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, No. 11-CV-246, 2013 U.S. Dist. LEXIS 74072, at *12 (S.D. Cal. May 24, 2013).

The reliance on *Alvarado* is grossly misplaced. Defendants are not parties to the AMT-Unified Messaging contract, and *Alvarado* does not hold — in any way — that third parties are entitled to rely on the subsequent conduct of contracting parties to alter or render inoperative the contract's terms. *See id*. at *11-12.

*Alvarado* involved a breach of contract in which the two parties to the contract conceded that, "for many years," one party paid the other royalties for product not covered by their written agreement. *See id*. at *12. In analyzing the situation, the Court noted as follows:

> When one party has, through oral representations and conduct or custom, subsequently behaved in a manner antithetical to one or more terms of an express written contract, he or she has ***induced the other party*** to rely on representations and conduct or custom. In that circumstance, it would be [] ***inequitable to deny the relying party*** the benefit of the other party's apparent modification of the written contract.

*Id*. at *11 (citations omitted) (emphasis added).

In other words, AMT or Unified Messaging (but certainly not Defendants)[10] could be entitled to rely on conduct of the other in asking a Court to modify the written terms of their

---

[9] *See* Defendants' Brief, at p. 11.
[10] The California Civil Code states that "[a] contract, made **expressly** for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." CAL. CIV. CODE §1559 (2013) (emphasis added). Case law discussing §1559 makes clear that "expressly" means "in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." *See Diamond Woodworks, Inc. v. Argonaut Ins. Co*., 109 Cal. App. 4th 1020, 1040, n.15 (Cal. App. 4th Dist. 2003). Notably "[i]f a contract is not made expressly for the benefit of a

5

contract. But even then, according to *Alvarado*, "before" modification of a written contract "can be implied," the conduct of the parties "must be inconsistent with the written contract so as to warrant the conclusion that the parties **intended to modify**" it. *Id*. at *12 (emphasis added).

In this case, neither AMT nor Unified Messaging is seeking modification of their contract. There is no dispute between them about what their contract says or covers. Neither has acted inconsistently with its respective rights. And neither has intended by its actions to either enlarge, or disavow, rights in the subject portfolio.

But at a minimum, whether AMT and Unified Messaging intended anything contrary to their contract is a question of fact subject to dispute. Indeed, though the *Alvarado* Court concluded that the "evidence suggests that [the subject] royalty payments were not mistaken, but rather intended," the Court held that "[t]he conflict between the [contract's] express terms and the apparently inconsistent conduct of the parties raises genuine factual disputes as to whether the parties intended" any modification. *Id*. at *13. The Court, thus, held summary judgment "on these grounds" to be "inappropriate." *Id*. at *14. The same holds true here.

### C. *Markman* hearing comments are a red herring.

There is no better example of the lengths Defendants will go in attempting to catch lightning in a bottle than to turn attorney argument at *Markman* into some epiphany that Unified Messaging has no interest in the '066 patent. Reading the relevant portions of the *Markman* transcript in context, it is clear that the point communicated concerning the stipulated construction in an earlier California action is that claim construction is often in flux and subject to adjustment by the Court at any point in time. The idea is for this Court to consider the intrinsic record and make its own decision as to the proper construction of the disputed phrase.

---

particular third person, that person **cannot enforce the contract** even though he or she would receive some benefit from the performance of the contract." *Id*. at 1040.

*See Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) ("[T]he trial judge has an independent obligation to determine the meaning of [patent] claims, notwithstanding the views asserted by the adversary parties.")[11]

A claim term subject to stipulation of parties in earlier litigation is not a ruling, and there is nothing wrong with tweaking claim construction positions over time.[12] Indeed, the stipulated construction at issue was the culmination of negotiations between AMT and defendants in separate litigation concerning multiple terms across multiple, unrelated patents.[13] Such negotiations naturally involve give-and-take (i.e., one party agreeing to the wording of a particular construction in exchange for the other party agreeing to the wording of another). Thus, stipulated constructions are not necessarily quintessential definitions of subject terms or phrases, and the fact that a particular stipulation has been made in no way establishes that the construction is unerringly correct.

Moreover, irrespective of who stipulated to what, the Court is not bound to adhere to it. *See, e.g., Cross Atlantic Capital Partners, Inc. v. Facebook, Inc*., No. 07-2768, 2011 U.S. Dist. LEXIS 27505, at *42-43 (E.D. Pa. Mar. 17, 2011). In *Cross Atlantic*, for instance, the Court discussed the fact that "claim construction is a matter of law which the district court has an independent obligation to resolve." *Id*. at *41. The Court then cited multiple cases[14] from

---

[11] *See*, *e.g*., Defendants' Brief, Exh. G. (Markman Transcript), at p. 60.
[12] *See*, *e.g*., Nelson Decl., Exh. 2 (*Wi-LAN v. Acer, Inc.*, No. 2:07-cv-00473 (E.D. Tex. Dec. 30, 2010), Memorandum Opinion and Order). In *Wi-LAN*, the Court reconsidered certain, prior constructions three weeks before jury selection. Order at p. 2. "Convinced that it erred in its original construction," the Court reconsidered, and re-construed, four disputed phrases. Order at pp. 3, 10.
[13] *See* Nelson Decl., Exh. 3 (Joint Claim Construction and Prehearing Statement) at pp. 3-4.
[14] *See Ultradent Prods., Inc. v. Hayman*, No. 00-13402, 2002 WL 34477127, at *9 (C.D. Cal. Jan. 11, 2002) (holding that court was not bound by parties' claim construction stipulation "because claim construction is exclusively a question of law"); *Comtech EF Data Corp. v. Radyne Corp.*, No. CV-06-1132, 2007 U.S. Dist. LEXIS 97038, at *14 (D. Ariz. Oct. 12, 2007)

various districts in holding that "district courts are **not bound by the stipulation of parties** concerning claim terms." *Id*. (emphasis added); *see also Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp.*, No. C 04-4675, 2006 U.S. Dist. LEXIS 13243, at *18 (N.D. Cal. Mar. 24, 2006) (holding that an argument "that plaintiff ha[d] 'waived' its right to offer alternate constructions ha[d] no bearing on the court's ability to determine the proper construction as a matter of law" because the "court is free to accept either party's proposed construction, or to reject both if both are flawed" (citation omitted)).

The Court can, and should, accord the disputed phrase the construction it deems appropriate in view of the intrinsic record. The fact that the parties dispute whether or not it is appropriate for Unified Messaging to argue that AMT's prior stipulated construction should be modified really has no bearing on the construction of the subject phrase, and certainly not on whether terminal disclaimers have been violated by breaking common ownership requirements.

      **D.**    **Unified Messaging's litigation is consistent with the letter and spirit of terminal disclaimers.**

A terminal disclaimer carries with it a common ownership requirement that prevents a patent owner from keeping one patent for itself and assigning the other to a third party, such that both parties might sue a **single infringer** in separate actions seeking to collect royalties. *In re Hubell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013); *see also* 3A-9 Chisum on Patents § 9.04[2][b][ii] ("The possibility of multiple suits against **an infringer** by assignees of related patents has long been recognized as one of the concerns behind the doctrine of double patenting.").[15]

---

(stating that "claim construction is an obligation of the court that is independent of the views asserted by the adversary parties"); *Boston Scientific Corp. v. Micrus Corp.*, 556 F. Supp. 2d 1045, 1051 (N.D. Cal. 2008) (holding that "the court is not required to adopt a construction of a term, even if the parties have stipulated to it" (citation omitted)).

[15] The other policy consideration attendant to terminal disclaimers is to avoid extending the life of patent protection improperly (for instance, when claims in related patent applications recite

Unified Messaging's contract with AMT does not run afoul of this principle and is otherwise consistent with both the letter and the spirit of terminal disclaimer law. Unified Messaging owns an exclusive license throughout a specified territory delineated by Covered Entities. The exclusive license is not limited to particular subject matter, and Unified Messaging may enforce any claim in any patent in the portfolio against Covered Entities to the full extent of its breadth.[16]

Enforcing an exclusive territorial license does not harbor the same risk of multiple suits or multiple liabilities associated with a license that apportions a patent (or patent portfolio) by subject matter (like a field of use license). In *International Gamco*, the Federal Circuit noted that "allowing a licensee, even one with exclusive rights to the patent for a particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *International Gamco*, 504 F.3d at 1278. "In contrast," however, the Federal Circuit held that "an exclusive territorial license does not involve the same multiplicity risks because a single act of infringement is likely to give rise to only one viable suit for infringement by the exclusive territorial licensee in the jurisdiction where the infringement occurred." *Id*. at 1279.

---

similar inventions such that allowance of the later application, without a terminal disclaimer, effectively extends the life of invention protection). *See In re Hubbell*, 709 F.3d at 1145. This policy consideration is not implicated by Defendants' motion.

[16] As discussed in Unified Messaging's Opposition to UOL's Rule 11 Motion, if the Court determines that Unified Messaging does not have an exclusive, territorial license; then, as a bare licensee, there exists a curable, prudential standing issue (whereby AMT is added as a party plaintiff). *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348 (Fed. Cir. 2001); *see also Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1361-63 (Fed. Cir. 2010); *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1344 (Fed. Cir. 2007). Being a bare licensee does not, however, have terminal disclaimer implications, and no Defendant argues as much.

In defining Unified Messaging's territory in terms of Covered Entities, as opposed to using strict geographical parameters, the risks are further diminished. A Covered Entity identifies a specific alleged infringer for singular enforcement of the patents. Depending on how geographical parameters are defined, an infringer could be liable in two distinct territories, subjecting the infringer to two, non-overlapping suits for its activities in each jurisdiction.

In their briefing, Defendants surreptitiously inflate the recognized policy behind terminal disclaimers, broadly characterizing the policy (self-servingly) as seeking to "prevent separate and potentially divergent litigation on patents that are not patentably distinct."[17] This characterization omits the fact that terminal disclaimers prevent multiple, overlapping suits against a **single infringer**. The notion that terminal disclaimers are intended to prevent "potentially divergent litigation," in some general sense, is fiction.

Specifically, Defendants argue that Unified Messaging's claim construction positions underscore the importance of the terminal disclaimer common ownership requirement. But the simple fact that Unified Messaging believes that no construction is necessary for a phrase that was subject to a prior stipulation does not make Defendants' point. As discussed above, claim construction positions often develop over time. A party (or the Court) may recognize, for example, that a previous construction is incorrect. This necessitates making adjustments, and adjusting a claim construction position does not create an unfair multiplication of the patent monopoly. Defendants here are simply not subject to suit by AMT (on the one hand) and Unified Messaging (on the other hand) where conflicting claim construction positions may be taken.

---

[17] *See* Defendants' Brief, at p. 5, 13.

In their brief, Defendants attempt to make two arguments concerning the AMT-Unified Messaging contract, suggesting that certain provisions, indeed, create the risk of suits by both AMT and Unified Messaging.[18] First they point to section 2.7, noting that "AMT may control litigation and sue that party on the '066 patent in certain circumstances, such as when that party has brought suit against AMT."[19] This statement is disingenuous.

Section 2.7 contractually obligates Unified Messaging to file suit against a Covered Entity that sues AMT for patent infringement.[20] In such circumstance, AMT has the right control the litigation. However, the provision — in no way — creates a risk of multiple lawsuits against the Covered Entity. It does exactly the opposite. Only **Unified Messaging** maintains the right to sue the Covered Entity.

Apparently, Defendants' argument concerning section 2.7 presupposes the conduct-based modification of the AMT-UMS contract such that AMT is the sole and exclusive owner of the '066 patent. Setting aside any extra-contractual modification (which is address and dispensed with, above), the four corners of the contract document make clear that Unified Messaging possesses rights to <u>all</u> patents in the portfolio (including the '066 patent) relative to Covered Entities.[21] AMT has no right to sue a Covered Entity.

Defendants make a similar argument with respect to AMT's reversionary rights established in the contract should the contract be terminated prior to the expiration of the patents in the portfolio.[22] They claim that should rights revert back to AMT, AMT will have the

---

[18] *See* Defendants' Brief, at pp. 14-15.
[19] *Id*., at p. 14.
[20] This assumes that Unified Messaging has not already sued the Covered Entity and that Unified Messaging "reasonably determines that such an action cannot be brought consistent with the standards of Rule 11 of the Federal Rules of Civil Procedure." Nelson Decl., Exh. 1 at §2.7.
[21] *See* Nelson Decl., Exh. 1 at §2.2.
[22] *See* Nelson Decl., Exh. 1 at §9.1, *et seq*. Such term and termination sections are commonplace.

opportunity to sue Covered Entities for infringement. But, again, the contract has not created a situation that multiplies litigation against a Covered Entity. If rights ever revert such that AMT can sue a Covered Entity, either AMT becomes the first to sue the Covered Entity (because such entity was not previously sued by Unified Messaging), or AMT steps into Unified Messaging's shoes. If the Covered Entity is a licensee under the portfolio, it may not be sued by AMT. And if the Covered Entity has been sued by Unified Messaging (and is not a licensee), the doctrines of *res judicata* and collateral estoppel are implicated.

In essence, all of Defendants' policy-related arguments start with a faulty premise; then misapply the facts. The AMT-Unified Messaging contract (and the AMT/Unified Messaging relationship, generally) does not run afoul of terminal disclaimer policy and — consistent with legal precedent — the applicable terminal disclaimers are untainted.

## IV. CONCLUSION

There is an old adage[23] that goes as follows: "When the facts are on your side, pound the facts. When the law is on your side, pound the law. When neither is on your side, pound the table." So Defendants here pound the table. For the reasons stated above, Unified Messaging asks that Defendants' motion be, in all respects, denied.

Dated: **June 26, 2013**.                                  By:

/s/ *Edward R. Nelson, III*
Edward R. Nelson, III
Texas State Bar No. 00797142
Lead Counsel
Brent N. Bumgardner
Texas State Bar No. 00795272
Christie B. Lindsey
Texas State Bar No. 24041918
Thomas C. Cecil
Texas State Bar No. 24069489

---

[23] The adage is often attributed to former Columbia law professor Jerome Michael.

NELSON BUMGARDNER CASTO, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111
enelson@nbclaw.net
bbumgarnder@nbclaw.net
clindsey@nbclaw.net
tcecil@nbclaw.net

Timothy E. Grochocinski
Illinois State Bar No. 6295055
INNOVALAW, P.C.
1900 Ravina Place
Orland Park, IL 60462
(708) 675-1974
teg@innovalaw.com

Anthony G. Simon
Illinois State Bar No. 6209056
Michael P. Kella
Illinois State Bar No. 6307908
Benjamin R. Askew
Illinois State Bar No. 223950
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, MO 63101
(314) 241-2929
asimon@simonlawpc.com
mkella@simonlawpc.com
baskew@simonlawpc.com

Andrew G. DiNovo
Texas State Bar No. 0079059
Jay D. Ellwanger
Texas State Bar No. 24036522
DINOVO PRICE ELLWANGER &
HARDY, LLP
700 N. Mopac Expy, Suite 350
Austin, Texas 78731
(512) 539-2631
adinovo@dpelaw.com
jellwanger@dpelaw.com

**Attorneys for Plaintiff
Unified Messaging Solutions LLC**

## **CERTIFICATE OF SERVICE**

  I hereby certify that on June 26, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                */s/ Edward R. Nelson, III*
                Edward R. Nelson, III